Thurman, C. J.
Catharine Stober was not a party to the action, nor was she incompetent as a witness, on the ground of interest. She was called by the party to whom her interest, if she had any, was adverse; but had she been called by the administrator, her interest would not have disqualified her. See “ act to improve the law of evidence,” 2 Curw. 1522, sec. 3; Butt v. Butt’s Adm’r., 1 Ohio *517 St. 222; Hart v. Stephens, 6 Adol. & Ell. N. S. 937; S. C. 51 Eng. Com. Law. 937 ; 9 West. Law Journal, 328.
If, therefore, she was incompetent, her disqualification arose from considerations of public policy, unconnected with interest. It is well known that the rule that forbids husband and wife to testify for or against each other, or where either is interested, is not limited to the duration of the marital relation, but for excellent reasons, whose importance can hardly be overestimated, continues beyond it. 1 G-reenl. Ev., sec. 337. But whether the rule does not undergo some modification upon the dissolution of the marriage, is a question upon which the language of judges is scarcely reconcilable. This is owing not so much, or at least not so often, to any real difference of ojfinion, as to a somewhat incautious generality of expression, and to the additional fact that, by some courts, the question of competency has been treated as one of interest merely, while, by others, an enlarged and philosophical view of it has been taken.
One of the earliest, and a leading case on this subject, is Munroe v. Twisleton, Peake’s Ev. App. 87. It was an ^action of “ assumpsit, for the board and lodging of an infant child of the defendant. To prove the contract, the plaintiff called Mrs. Sandon, who at the time of making it was the wife of the defendant, but had since been divorced from him by act of parliament, and was married again.” She was objected to, and the objection sustained. Lord Alvanley said:
“ To prove any fact arising after the divorce, this lady is a competent witness, but not to prove a contract or anything else which happened during the coverture. She was at that time bound to secrecy; what she did might be in consequence of the trust and confidence reposed in her by her husband, and miserable, indeed, would the condition of a husband be, if, when a woman is divorced from him, perhaps for her own misconduct, all the occurrences of his life, intrusted to her while the most perfect and unbounded confidence existed between them, should be divulged in a court of justice. If she might be a witness in a civil proceeding, she might equally be so in a criminal prosecution; and it never shall be endured, that the confidence which the law has created, while the parties remained in the most intimate of all relations, shall be broken whenever, by the misconduct of one party — for misconduct alone can have that effect — the relation has been dissolved.”
It is obvious that these remarks to cases where the *518 witnesses have been divorced, and not to those in which death has sundered the marriage relation. The latter case was not before the court, and the manifest scope of the opinion and the tenor of the last sentence especially, would seem to indicate that it was not in the judge’s mind.
In Aveson v. Lord Kinnaird, 6 East, 192, upon the case of Monroe v. Twisleton being cited, Lord Ellenborough observed: “That, goes on the ground that the confidence which subsisted between them at the time shall not be violated in consequence of any future-separation. I doubt whether what Lord Alvanley there said was-meant by him to be applied to the circumstances *of that case; for it is generally considered that matters of domestic concern are intrusted to the wife. I rather consider him to have mentioned it. as a general doctrine, that trust and confidence between man and wife shall not be betrayed, and as such it is sound doctrine.”
This limitation has been frequently approved since it was suggested by Lord Ellenborough, and a distinction has also been made-between cases in which the marriage contract was dissolved by a divorce and those in which it was terminated by death.
Thus, in Beveridge v. Minter’s Executors, 1 Car. & P. 364; 11 Eng. Com. Law, 421 — which was an action upon an alleged promise of the testator to pay £150 to the plaintiff — the widow of the testator was held to be a competent witness for the plaintiff to prove the-promise. As no suggestion is found in the report that her testimony would violate any confidence reposed in her, it is presumable that such was not the ease.
Doker, executor of Doker, v. Hasler, sheriff of Sussex, Ryan & Moody, 198; 21 Eng. Com. Law, 416, was an action for a false return to a,fi.fa. “ The defense was that the execution was fraudulently taken out in order to protect the goods of the debtor against his assignees, under a commission of bankruptcy. In order to-prove this, the widow of the testator was called and asked to a conversation-between herself and the testator. This was objected to on the authority of Monroe v. Twisleton.”
Best, C. J., said: “ I remember that in that case, in which I was counsel, Lord Alvanley refused to allow a woman, after a divorce^ to speak to conversations which had passed between herself and her husband during the existence of the marriage. I am satisfied with the propriety of that decision, and I think that the happiness of the state that the confidence between man and *519, 520 wife should he kept forever inviolable. The point is of very great importance, and I will reject the evidence, in order that the question may receive a solemn discussion in case my present opinion should be thought unfounded.”
*A further consideration was rendered unnecessary by a verdict for the defendant, but had the question been again discussed, there is little, if any, reason to suppose that the ruling would have been changed. For surely the presumption was that if the husband disclosed to his wife a fraud he designed to perpetrate, he did so in confidence; a presumption not subject perhaps to disproof; but whether so or not, there was no offer -to disprove it. Again, the testimony tended to injure his reputation to a very serious degree, an objection which, of itself, has been held to be sufficient.
In Coffin v. Jones, 13 Pick. 445, Wilde, J., speaking of the cases upon this subject, said: “ They only decide that a widow is not allowed to disclose conversations between her and her husband, but not that she is incompetent to testify as to other matters.”
Of the same opinion was the Supreme Court of Vermont, in Williams v. Baldwin, 7 Vt. 506; where, after a reference to the general rule of exclusion, it is said: “ This rule is too important to the peace and confidence of married life to be disturbed, but we think it was not applicable in the present instance. The witness was not called to disclose communications made by her late husband, but to state independent and distinct facts; the possession by him of the plaintiff’s letters, as ascertained from inspection by the witness herself.”
In Edgell v. Burnett & Lowell, 7 Vt. 534, a widow was permitted to testify to declarations made by her late husband during the coverture ; but it was also held that the testimony would not be admissible if offered “ to contradict and impeach the testimony which he gave,on a former trial between the parties.”
Ratcliff v. Wales, 1 Hill, 63, was an action for crim. con. with the plaintiff’s wife. After a divorce, a vinculo, he offered her as a witness to jmove the adultery. She was permitted to testify, and the ruling approved on a motion for a new trial. *The court .said, inter, alia: “ For the purpose' of promoting a perfect union of interests, and securing perfect confidence between husband and wife, the courts have generally refused to admit the wife as a witness against the husband, even after the' marriage contract was at an end, when she was called to speak of matter which *521 during the continuance of the marriage, and which might affect the husband either in his pecuniary interest or character. But in the case at bar, the witness was not called against her former husband, nor was she asked to betray any confidence which he had reposed in her during the coverture. The fact which she was offered to prove, did not even come to her knowledge in consequence of the marriage relation.”
This decision was approved and followed, by the Supreme Court ■of Massachusetts, in the case of Dickerman v. Graves, 6 Cush. 308.
In Cook v. Grange, 18 Ohio, 526, it was held, that a woman who has been divorced, is not a competent witness against her late husbaud, to prove a contract made by him during the coverture; and the judge who delivered the opinion went quite as far as did Lord Alvanley in Monroe v. Twisleton. Ho repudiated a distinction, so far as that case was concerned, between confidential communications and those not confidential, and between conversations and other independent facts, and laid down the rule broadly that the divorced witness was incompetent to testify to any fact which could not have been proved by her when it occurred. But he said nothing as to the rule in cases where the dissolution of the marital relation was occasioned by death.
Barnes v. Carnack, 1 Barb. 392, is to the same effect as Cook v. Grange, and goes fully as far. It also was a case of a divorced witness, and the very strong and general language of the judge should, I suppose, be restricted accordingly. It is not probable that he meant it to apply, in its full extent, to the case of a widow offered as a witness.
McGuire v. Maloney, 1 Ben Monroe, 224, *“was an action of trover, brought by John Maloney against McGuire, who, as administrator of John Maloney, Sr., the plaintiff’s father, had sold divers goods and chattels, as belonging to the estate of the decedent, but which the plaintiff claimed to have been his property, under an instrument of writing purporting to have been executed by his father and himself, in the presence of two subscribing witnesses, and to transfer to him the property in question. To prove the execution of this instrument, the plaintiff introduced his mother, tne widow of John Maloney, Sr., who stated, in substance, that the two subscribing witnesses were both dead; that she saw her husband write the instrument and sign the names of himself and the plaintiff^ and also of the subscribing witnesses, whom she *522 also saw make their marks; that she heard the two Maloneys make-the agreement and acknowledge it, and that her husband handed' the instrument to her at its date, and she had kept it ever since,, whereupon, the instrument was handed to the jury. The defend • ant objected to the competency of the witness when she was offered,, and afterward moved to exclude her testimony and the instrument from the jury.” The circuit court overruled the objection and motion, and the plaintiff obtaining a verdict and judgment, the defendant appealed. The court of appeals affirmed the judgment, and stated the rule to be as follows :
“ The law will not permit, even after the death of the husband, any disclosure by the wife which seems to violate the confidence-reposed in her as a wife, lost such jtermission might tend to impair the harmony of the marriage state, and to affect, injuriously, the interests of society dependent upon it.
“ But where there is not even a seeming confidence — when the-act done or declaration made by the husband, so far from being private or confidential, is designedly public at the time, and from its nature must have been intended to be afterward public — there is no interest of the marriage relation or of society, which, in the absence of all interest in the husband or wife, requires the latter *to be precluded from testifying between other parties, such act or declaration not affecting the character or person of the husband.”
In Caldwell v. Stuart’s Ex’r, 2 Bailey, 574, it was held that “the-wife is a competent witness, in an action against the executor of her husband, to prove a parol gift by the husband in his lifetime. The dissolution of the marriage by death removes the objection arising out of the conjugal relation.” After stating the general rule of exclusion in respect to husband and wife, Johnson, J., delivering the opinion of the court, proceeded as follows:
“ In the ease of Monroe v. Twisleton, the rule is, I think, with great propriety, extended to a wife who had been divorced a vinculo matrimonii. The sacredness of the confidence existing in the relation of husband and wife, ought never to be violated, unless for the-most imperious necessity. But neither the rule, nor any of the reasons upon which it proceeds, have any — the most remote — application here. The husband is no party; he has ceased to have any interest in temporal concerns. The defendant, the executor, represents the interests of the creditors, legatees, or distributees, as *523 the ease may be, and not the husband’s. There is no danger of matrimonial discord, nor is there any violation of confidence. She has only disclosed what the husband intended should be known. Without it, his intention in making the gift would have boon defeated.”
In Robin et al. v. King, 2 Leigh, 140, it was held that a widow was not a competent witness, in a suit 'for freedom against a purchaser from her late husband, to prove that before the sale, in the presence of his family, and without any injunction of secrecy, her husband had declared that the mother of the plaintiff was an Indian woman. The court were of the opinion that, although there was no injunction of secrecy, the husband could not have intended that his admission that he was unlawfully holding the woman and’ her children in slavery — as was the case if she was an Indian — should be made public; and, consequently, the disclosure must have been ■confidential.
*In Gaskill v. King, 12 Iredell, 211, it was held that ■after the death of a husband, the wife is a competent witness .against his administrator, to prove the execution of a deed made by the intestate in favor of a third person.
And in Pike v. Hays, 14 N. H. 22, the court said: “ There is no reason why the wife, after the death of her husband, should not state facts which came to her knowledge from other sources, and not by means of her situation as a wife.”
See, also, in support of the competency of a widow, Wells v. Tucker, 3 Binney, 366; Cornell v. Vanartsdalen, 4 Barr, 364, and 1 Greenl. Ev., sec. 338, where the result of the authorities is thus stated:
“ This rule, in its spirit and extent, is analogous to that which excludes confidential communications made by a client to his attorney, and which has been already considered. Accordingly, the wife, after the death of the husband, has been held competent to prove facts coming to her knowledge from other sources, and not by means of her situation as a wife, notwithstanding they related to the transactions of her husband.”
Prom this review of the authorities, it is quite apparent that the ease of Cook v. Grange does not sustain the plaintiff in error; for whatever may be the true doctrine in respect to divorced witnesses, there would seem to be no reasonable doubt, at this day, that a if not a witness to conversations with her *524 husband, is competent to prove other independent facts that occurred during the coverture, the statement of which by her violates no confidence, nor is in anywise prejudicial to his reputation. Whether her competency, by the common law, goes beyond this and extends to conversations not confidential, it is unnecessary for us to say, for that question is not before us. Catharine Stober testified to no conversations at all, nor to anything the knowledge of which was derived through conjugal confidence, nor to anything prejudical to the reputation of her deceased husband. The acts proved by her were not the acts of *her husband, but of the plaintiff, McCarter; they were not private or confidential doings, but were open and public; not things of which she alone could have a knowledge, but facts open to the observation of every one. We think that she was a competent witness to jorove them, and that her testimony was properly admitted; and in thus holding, we do not mean to question, much less to overturn, the authority of Cook v. Grange.
The code has no application to this case, which was pending when that statute took effect, but it may not be inappropriate to refer to its provision upon this subject, which was possibly intended as a mere affirmation of the common law. If that was the design, it obviously strengthens the conclusion at which we have arrived, for its language is as follows: “Husband and wife [shall be incompetent to testify] for or against each other, or concerning any communication made by one to the other during the marriage, whether called as a witness while that relation subsisted, or afterward.” Code, sec. 314.

Judgment affirmed.