DUTCHESS SPECIAL TERM, December, 1847.  *Barculo,* Justice.

## BARNES *vs.* CAMACK and wife, and others.

The testimony of the wife can never be received against her husband, except in proceedings instituted against him on her behalf.

This rule holds not only during the coverture, but also continues to apply after a dissolution of the marriage contract, as regards transactions which took place previous to such dissolution.

The only safe and correct practice is, to adhere to the rule that whatever passes between the husband and wife, in confidence, shall forever remain sacred.

Where a mortgage is cancelled by the mortgagee, and discharged of record, without actual satisfaction, at the request of the mortgagor and in consequence of his fraudulent representations, and a new mortgage is substituted in its place;—the mortgagor concealing from the mortgagee the fact that, intermediate the date of the cancelled mortgage and the giving of the substituted security, he has given to a third person a mortgage upon the same premises, which has been recorded—a court of equity has the power either to revive the cancelled mortgage, or to give the substituted security a priority over the mortgage given to such third person.

A court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice.

A subsequent mortgagee who takes his conveyance with notice of a prior mortgage upon the premises, and who subsequently acquires a superior legal title to the premises, by the cancelling of the prior mortgage through mistake, without having parted with any property or right, or placing himself in any worse condition in consequence of the cancelling of the prior mortgage, is not a bona fide mortgagee within the meaning of the recording act and the adjudged cases; and he will not be permitted by a court of equity to retain such superior legal title, to the injury of the prior mortgagee.

Where the legal rights of parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new rights, acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.

IN EQUITY.   On the 3d of May, 1841, the defendants Moses Camack and wife executed a mortgage to the plaintiff, to secure $300, upon a lot of land in Newburgh, thirty feet front and rear, and ninety feet deep.   On the 6th of September, 1841, the same parties executed a mortgage to the defendant Brown for $1000, upon a portion of the same premises, and upon other lands.   On the 1st of March, 1842, Moses Camack applied to the plaintiff to release from her mortgage a strip of ten feet on the westerly side of the lot mortgaged to her, alleging as a rea-

Barnes *v.* Camack.

son, that he had sold it to his brother James Camack and given a warranty deed. He informed her also, that the proper and only mode of doing the business was to cancel the first mortgage and take a new one upon the remaining portion of the lot, which he assured her would preserve her lien perfect as it then was upon that portion of the lot. She believing his statements, and being ignorant of the mortgage to Brown, acknowledged satisfaction of the first mortgage, and took another upon the remaining twenty feet, for the same sum, dated March 1st, 1842.

The plaintiff insists that she never intended to release the twenty feet; and that, if Brown's mortgage is preferred to hers, she will lose her debt. The cause came to a hearing on the bill and the separate answer of Moses Camack and John Brown, and upon proofs.

*M. I. Townsend & J. W. Brown*, for the plaintiff. 1. The plaintiff's mortgage was the oldest lien on the premises in question; and unless the same is to be regarded as extinguished or satisfied in equity, it is still entitled to priority over all the other incumbrances. It is neither satisfied nor extinguished, even if no fraud has been practised on the plaintiff. (1 *Cowen*, 125. 1 *Root's Rep.* 500. 2 *New Hamp. Rep.* 525. 9 *Mass. Rep.* 242. *Roll. Abr.* 470. *Cro. Car.* 86. 8 *John. Rep.* 54. *Bac. Abr. Extinguishment, D.* 20 *John. Rep.* 407. 11 *Id.* 513, 16, 17. 4 *Har. & McHenry*, 482. 6 *Coke*, 44, *Higgins' case.* 6 *Jurist Rep.* 987. 2 *Harr. Dig.* 3903.) 2. The certificate of satisfaction of the plaintiff's mortgage having been obtained by the defendant Camack by fraud and misrepresentation, as to all persons except bona fide purchasers, the rights of the parties are to be settled in the same manner as if the mortgage had never been cancelled of record. (*Livingston* v. *The Peru Iron Company*, 2 *Paige*, 390. *Champlin* v. *Laytin*, 6 *Id.* 189. *Livingston* v. *Hubbs*, 2 *John. Ch. Rep.* 512.) 3. If no actual fraud has been perpetrated upon the plaintiff, the representations made by Camack as to the mode of transacting the business led her to do what she did not intend to do; and she is for that reason entitled to relief. (2 *Cowen & Hill's*

*Notes to Phil. Ev.* 1485, *note* 998. 1 *Story's Eq.* 131 *to* 160. 18 *Wend.* 409. *Champlin* v. *Laytin,* 6 *Paige,* 189.) 4. John Brown the defendant, whose mortgage bears date September 6th, 1841, is not a bona fide purchaser as against the plaintiff in this cause. He took his mortgage with actual notice. His mortgage is therefore not entitled to a priority, but is in equity to be postponed to the mortgage of the plaintiff dated May 3d, 1841. (*Padgett* v. *Lawrence,* 10 *Paige,* 170, 180. *Dickerson* v. *Tillinghast,* 4 *Id.* 215. *Wardell* v. *Howell,* 9 *Wend.* 170. *Rosa* v. *Brotherson,* 10 *Id.* 85. *Coddington* v. *Bay,* 20 *John.* 637. 2 *Story's Eq.* 590, 591, *n.*) 5. The complainant is entitled to a decree declaring that the certificate of satisfaction of her mortgage of the 3d of May, 1841, was obtained by fraud and misrepresentation, and that such certificate is of no effect as against the defendants; and for a foreclosure and sale upon the mortgage of 3d of May, 1841, as to the twenty feet.

*D. B. Boice,* for the defendants. 1. The plaintiff cannot set up any acts of fraud or misrepresentations on the part of Moses Camack to induce her to discharge her mortgage, to which acts J. Brown was not a party, and of which he was ignorant; because (1) Even if true, such acts (if the certificate of satisfaction should be invalid) would be prejudicial to the rights of the defendant Brown. The equities are equal, and the law must prevail. (2) The plaintiff relied upon the statements of Moses Camack personally, and by her own act (if the satisfaction was invalid) misled the defendant John Brown, and prejudiced his rights. Her intentions do not alter the case. (*See Ferris* v. *Hendrickson,* 1 *Edw. Ch. Rep.* 133.) 2. The plaintiff received a valid consideration for the satisfaction of her first mortgage; and the certificate of satisfaction cannot be set aside nor declared void, except upon direct proof of fraud, or undue influence exercised by the party to be benefitted. The rights of third persons cannot be affected by it. Fraud cannot be presumed; it must be proved, and expressly found. (*Clark* v. *White,* 12 *Peters' Rep.* 178. *Barton* v. *Rushton,* 4 *Dess.* 373. *Ex'rs*

*of Chouler* v. *Smith,* 3 *Id.* 12.) 3. The answer of the defendant Moses Camack, so far as it is responsive to the bill, is evidence for John Brown, and cannot be overthrown except by the testimony of two witnesses. (*Daniel* v. *Mitchell,* 1 *Story,* 172. *Neville* v. *Demerritt,* 1 *Green's Ch. Rep.* 322. *Lenox* v. *Prout,* 3 *Wheat. Rep.* 527.) 4. The proofs do not sustain the charges of fraud, or misrepresentations made by Camack to the plaintiff to induce her to acknowledge satisfaction of her mortgage, as alleged in the bill.

BARCULO, J. The first question arising in this case is, whether the testimony of Hannah Camack was properly received. The objection was distinctly taken before the examiner, and, although not insisted on at length on the argument, it is undoubtedly a valid one, according to well settled principles. The witness was the wife of the defendant Moses Camack, and was divorced from him, by a decree of the court of chancery made on the 28th day of May, 1846, for the adultery of the husband committed in the year 1843. Her testimony relates to occurrences which took place in the years 1841 and 1842, while she was living with her husband. When the objection was taken before the examiner, the decree was produced, and thereupon the testimony was taken.

The authorities, I think, establish the proposition fully, that the testimony of the wife can never be received against her husband, except in proceedings instituted against him on her behalf. This rule holds, not only during the coverture, but also continues to apply after a dissolution of the marriage contract, as regards transactions which took place previous to such dissolution. Mr. Phillipps thus lays down the law on this subject: "This general rule of evidence, which has been adopted for the purpose of promoting a perfect union of interests, and of securing mutual confidence, is so strictly observed, that even after a dissolution of marriage for adultery, the wife is not admitted to give any evidence of what occurred during the marriage, which would have been excluded, if the marriage had continued. This, as Lord Ellenborough has said, is on the

ground that the confidence, which subsisted between them at the time, shall not be violated in consequence of any future separation.    Thus one great cause of distrust is removed, by making the confidence which once subsists, ever afterwards inviolable in courts of law."    (1 *Phil. Ev.* 83.    *See also Cowen & Hill's Notes,* 1554; *State* v. *Phelps,* 2 *Tyler's Rep.* 374.) In *Ratcliff* v. *Wales,* (1 *Hill,* 63,) Bronson, Justice, in delivering the opinion of the court, distinctly recognizes this doctrine. Indeed, a contrary rule would be productive of intolerable evils. If the law were that a divorce *a vinculo matrimonii* would admit the wife to take the stand as a witness, and allow her to disclose all the transactions of the husband's life which had been intrusted to her in the days of unbounded faith, it would tend to impair that mutual confidence between man and wife which society requires, and which the law ought to protect. Designing men might even become instrumental in procuring a divorce, for the very purpose of using the testimony of the wife to penetrate the secret affairs of her husband.    The only safe and correct practice is, to adhere to the rule, that whatever passes between husband and wife in confidence, shall forever remain sacred.    The testimony of the wife, therefore, must be laid out of this case.    Fortunately for the plaintiff, the main facts are substantiated by other witnesses.

The testimony shows very clearly, that her son in law, Moses Camack, by gross and fraudulent misrepresentations, induced the plaintiff to execute a satisfaction piece, on which her first mortgage was cancelled of record; and the second mortgage, of March, 1842, was substituted in its place.    By this operation the mortgage of the defendant Brown, having been given in September, 1841, would stand first upon the record and be entitled to priority, unless this court can revive the first mortgage of the plaintiff, or give her second mortgage priority over Brown's. I have no doubt of the power of the court to do either, if the case will warrant its interference.

It is a familiar doctrine, that a court of equity will keep an incumbrance alive, or consider it extinguished, as will best serve the purposes of justice.    (*Forbes* v. *Moffatt,* 18 *Ves.* 384.

*Starr* v. *Ellis*, 6 *John. Ch. Rep.* 393.    *Neville* v. *Demeritt*, 1 *Green's Ch. Rep.* 321.)    In *Miller* v. *Wack*, (*Saxton's Ch. Rep.* 204,) the chancellor of New-Jersey held, that the *simple cancellation* of a mortgage on the record was not an absolute bar, unless there had been actual satisfaction; that the cancelling is evidence sufficient to sustain the rights of all persons interested, unless the party setting up the cancelled mortgage should shew satisfactorily some *accident, fraud* or *mistake.* (*See also Jackson* v. *Stockholm*, 1 *Cowen*, 125; *Cornell* v. *Lamb*, 20 *John.* 407.)    Hence there is no difficulty in reviving the first mortgage as against the mortgagor; it having been cancelled by his fraud, and without any actual satisfaction. The principal question is, whether the plaintiff is entitled to a decree as against Brown.

Brown does not appear to have been a participator in the fraud.    The facts of the case entirely acquit him of any actual connection with the misrepresentations of Camack.    Nevertheless the plaintiff was induced to acknowledge satisfaction of her first mortgage by those misrepresentations, and under a mistake of *facts* in regard to the existence of any other incumbrances. Is the defendant Brown in a situation where he can be permitted to take advantage of the mistake or fraud?

The plaintiff's first mortgage was given some months before Brown's.    It was on record, and he also had actual notice of it, when his mortgage was executed.    Six months after his mortgage was taken, the first mortgage was cancelled.    He has not loaned any money, or done any act on the faith or strength of the cancellation.    He is not, therefore, a *bona fide* mortgagee within the meaning of the recording act and the adjudged cases. In *Dickerson* v. *Tillinghast*, (4 *Paige*, 221, 2,) the chancellor remarks, " so if a subsequent purchaser merely takes the legal estate in payment of, or as security for, a previous debt, without giving up any security, or divesting himself of any right, or placing himself in a worse condition than he would have been in, if he had received notice of the prior equitable title, or lien, previous to his purchase, the court will not permit him to retain the legal title he has thus obtained, to the injury of another."

Barnes *v.* Camack.

In like manner Brown, not having parted with any property or right, nor having placed himself in any worse condition, in consequence of the plaintiff's having cancelled her first mortgage, but having acquired a superior legal title by reason of her mistake, this court cannot permit him to retain it, to the injury of the plaintiff; but must give preference to the equity of the latter. (*Padgett* v. *Lawrence,* 10 *Paige,* 170. *Millspaugh* v. *McBride,* 7 *Id.* 509. *Daniel* v. *Mitchell,* 1 *Story's Rep.* 172. *McCarthy* v. *Decaix,* 1 *Russ. & Mylne,* 614.)

*Hyde* v. *Tanner,* (*ante, p.* 75,) was in some respects similar to this case. In that case a mortgage to the plaintiff had been given by an intestate, and after his death it was cancelled and a new mortgage taken from the heir, on the same premises, in its stead. This court set up the old mortgage and gave it priority, as against the creditors at large of the deceased, upon the ground that the first mortgage had been cancelled under a mistake of fact in regard to the existence of debts beyond the amount of assets; and that the creditors had not, in any way, been prejudiced by the cancellation. The difference between that case and the present is, that in the former the mistake was *inferred,* here it is *proved.* The principle on which both are decided, and which runs through all cases of this description, is, that when the legal rights of the parties have been changed by mistake, equity restores them to their former condition, when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.

The plaintiff is therefore entitled to a decree, declaring the satisfaction piece void for fraud and mistake, and for the foreclosure and sale of the mortgaged premises under her two mortgages. The proceeds of the sale are to be first applied in payment of the debt and costs of the plaintiff. The surplus, if any, is to be applied towards the payment of the defendant Brown's debt.

SAME TERM.   *Before the same Justice.*

### CUNNINGHAM *vs.* KNIGHT.

An infant *feme covert* cannot bind herself by deed, so as to bar her right of dower.

Where, in a suit for the recovery of dower, a former owner of the land, who has conveyed the same, by warranty deed, to the person from whom the defendant derives his title, is introduced as a witness for the defendant, a release executed by the defendant to the witness is good and valid, and removes the objection to his competency on the ground that he will be liable over to his grantee, or to the defendant, in case of a recovery by the plaintiff in the suit for dower.

It is sufficient if, at the time of testifying, the witness is disinterested. It is not a question whether he may, by possibility, or in the course of events, become interested.

A covenant of warranty runs with the land, so long as it remains unbroken. When it is broken by an eviction of the purchaser, or his assignee, a right of action accrues to him to recover the consideration money, and interest. It then takes the character of a chose in action, and can be released by the covenantee, or his assignee.

Where, upon the purchase of land, a deed is executed by the vendor, and a mortgage upon the land purchased is executed by the purchaser, and both conveyances are acknowledged and recorded at the same time, the presumption is that they were executed simultaneously, and that the mortgage was intended to secure the purchase money, although given to a third person, instead of the vendor, by the direction of the latter.

Where the husband has only an instantaneous seisin of land—as where he takes a conveyance thereof and gives back a mortgage for the purchase money—the wife is not entitled to dower therein.

The section of the revised statutes declaring that, where lands are mortgaged by the husband previous to his marriage, his widow shall nevertheless be entitled to dower out of the lands mortgaged, as against every person except the mortgagee and those claiming under him, is not applicable to the case of a mortgage for the purchase money.

Where land is sold, and a mortgage for the purchase money is given by the purchaser to a third person, by the direction of the vendor, the latter is to be regarded in equity as the real mortgagee.

Distinction between an *exception*, and a *reservation*, in a deed.

IN EQUITY.   The bill in this cause was filed to recover dower in certain lands in Orange county.   It set forth that the plaintiff, on the 9th of November, 1814, was married to James Cunningham, who was then seised of the premises, consisting of about 100 acres; that on the 24th of May, 1815, she joined with her husband in a conveyance thereof to one James Smith,

Cunningham v. Knight.

the plaintiff being at that time an *infant ;* that her said husband died in 1832, leaving her entitled to her dower; and that the defendant was in possession and refused to assign her dower. The bill required an answer on oath from the defendant. The answer stated that on the 3d day of May, 1814, James Smith was the owner of the premises, subject to the right of one Peter Bush to have a conveyance of seven acres, under a contract between them, and that said James Cunningham made an agreement with Smith and Bush to purchase the whole premises for $3750, of which $2875 was to be paid to Smith for the ninety-three acres, and $875 to Bush for the seven acres; and that Cunningham should execute his bond and mortgage to Bush, for the benefit of the vendors, upon the lands so sold, and upon certain other lands, to secure the payment of the whole purchase money with interest, one year from that date; and that Smith should continue in the actual possession of the ninety-three acres until the payment of said sum of $2875, which possession should be in lieu of interest : that in pursuance of that agreement, Smith, on the 3d of May, 1814, executed a deed to Cunningham for the one hundred acres, and the latter executed a bond and mortgage to Bush to secure the whole $3750; that Smith remained in possession until May, 1815, when Cunningham, being unable to pay, reconveyed the premises to Smith by the deed dated 24th of May, 1815, which was executed by Cunningham and wife, and received by Smith and Bush, in satisfaction of the purchase money. The answer admitted the death of James Cunningham in 1832, and that the plaintiff had demanded her dower, but denied that she was entitled to any, and insisted that if she was entitled, her right was subject to the payment of the principal moneys mentioned in said mortgage with interest. The answer also admitted that the defendant was in possession of all except ten acres, claiming to hold under Smith by mesne conveyances, as a bona fide purchaser.

The proofs taken show 1st. A warranty deed from Smith to James Cunningham, dated May 2d, 1814, for the consideration of $5000, acknowledged the 3d, and recorded *the 5th of May, 1814, at 5 o'clock P. M.* 2d. A mortgage from James Cun-

ningham to Peter Bush, dated 3d of May, 1814, to secure $3750, covering the 100 acres in question and also 195 acres in addition, acknowledged the 3d and recorded *the 5th of May, 1814, at 5 o'clock P. M.* 3d. A certificate signed by James Cunningham, dated May 3d, 1815, by which he certifies that he will " transfer the land I bought of Mr. James Smith to him according to the last bargain agreed on by said Smith, Peter Bush and Abner Cunningham, and give at this time possession of all the land in my possession that I got of him the said Smith, and at or before ten days from this give possession of all the buildings on said possessions, to which I set my hand." 4th. A warranty deed from James Cunningham and wife of the 100 acres, " reserving and exempting seven acres from the southwesterly part of said piece of land this day conveyed by James Cunningham, the said party of the first part, to Wm. Bush," dated May 24th, 1815. 5th. A certificate of the clerk of Orange county, showing that the mortgage so given to Bush was discharged as to the 100 acres, excepting about eight acres, by his satisfaction piece acknowledged and filed on the 27th of January, 1816, and that the residue of said 100 acres was discharged in like manner, on the 6th of May, 1816, by a satisfaction piece acknowledged the 26th of April, 1816.

The defendant's counsel admits that the age of the plaintiff, her marriage, and the death of her said husband, are as stated in the bill. The defendant called as a witness Samuel Smith, a son of James Smith, who proved the agreement for the purchase of the 100 acres by Cunningham of Smith and Bush, substantially as stated in the answer; Cunningham agreeing to give the mortgage to secure the whole amount of the purchase money. The mortgage was given to Bush at the instigation of James Smith, who was father in law of Bush: the latter agreeing to give the former " obligations to secure him." James Smith remained in possession until the spring of 1815, when Cunningham being unable to pay, made a proposition to give up the property. Cunningham told James Smith " he would transfer the farm back to him again just as he had it before." James Smith said " he would think it over and let him know

what he would do." At a subsequent day the parties again met, when Cunningham agreed to convey the 93 acres back to Smith, to satisfy and pay $2875 of the mortgage given to Peter Bush, being the purchase money for that 93 acres. It was stated at every one of these meetings that no money had been paid by Cunningham for the land. At this last meeting Cunningham executed the certificate dated May 3d, 1815. This witness further testified, "I succeeded my father in the possession of the premises, and sold to David Webb, and Webb sold to William Knight."

*J. Wyman Jones*, for the plaintiff. I. The deed of conveyance from James Cunningham and the complainant, of the 24th of May, 1815, is inoperative and void as against the complainant. An infant *feme covert* cannot bind herself, by any deed or contract, either at law or in equity, except under the sanction of the court of chancery, or in cases provided for by the statute. (*Jones* v. *Todd*, 2 *J. J. Marsh.* 361. *Sandford* v. *McLean*, 3 *Paige*, 117, 121.) II. The proof offered by the defendant, that the mortgage to Peter Bush was given by James Cunningham to secure the purchase money of the land bought of James Smith, is inadmissible; and if admitted, is insufficient to establish the point. 1. The witness Samuel Smith is interested. A release from the defendant does not destroy his liability upon his covenant of warranty. 2. The testimony is introduced to contradict sealed instruments. ( *Webb* v. *Rice*, 1 *Hill*, 608; *S. C.* 6 *Id.* 219. *Stevens* v. *Cooper*, 1 *John. Ch.* 429. 1 *Phil. Ev.* 564, *notes* 1429, 1434.) III. The conveyance of 24th of May, 1815, to James Smith, was not made to satisfy the mortgage to Peter Bush. 1. The testimony does not show any thing more than an *executory agreement* to this effect. 2. This mortgage was satisfied at two different times; as to a portion, 27th of January, 1816; and as to residue, 26th of April, 1816. IV. The complainant is entitled to her dower, notwithstanding the mortgage to Peter Bush, as against the defendant and all persons except Bush and those claiming under him. (1 *R. S.* 733, 1*st ed.* 740, § 4.) James Smith, under

whom the complainant claims, never was an equitable mortgagee. He took obligations of P. Bush for his share of the mortgage. V. This deed of 24th of May, 1815, reserves and excepts seven acres of this lot, which the defendant admits he is in possession of, but to which he sets up no title whatever; and the complainant's right to dower in this portion of the farm is therefore undisputed. VI. The two acres which the defendant denies that he is in possession of, is not a part of the seven acres reserved in the deed from the complainant to James Smith. VII. The complainant is entitled to damages for withholding her dower in the seven acres of which her husband died seised. (1 *R. S.* 734, 1*st ed.* 742, § 19. *Russell* v. *Austin,* 1 *Paige,* 194.) VIII. The complainant is entitled to costs. 1. The court of chancery has concurrent jurisdiction with courts of law, in suits for assignment of dower. (*Badgley* v. *Bruce & Halsey,* 4 *Paige,* 98. *Russell* v. *Austin,* 1 *Id.* 194.) 2. The complainant was unable to proceed at law, as she could not pay the costs of the former suit commenced without her knowledge or consent. (*Swain* v. *Perine,* 5 *John. Ch.* 488.)

*John W. Brown,* for the defendant. 1. James Cunningham, before his intermarriage with the complainant, having executed a mortgage for the whole of the purchase money, simultaneous with the execution of the deed to him by James Smith, until payment of the amount secured by the mortgage, he had no such seisin as would entitle the complainant to her dower. (*Stow* v. *Tift,* 15 *John. Rep.* 459. *Jackson* v. *Dewit,* 6 *Cowen,* 316. 4 *Kent's Com.* 44, 45.) 2. By the agreement, James Smith was to continue in the possession of the premises until Cunningham paid the purchase money. The mortgage to Peter Bush to secure the payment of the purchase money, coupled with Bush's interest in the premises, and the agreement that Smith should retain the possession, was to all intents and purposes a mortgage to James Smith. 3. James Cunningham obtained the possession for two or three weeks by a forcible entry, and in violation of the agreement. He therefore never was in the lawful or rightful possession of the property, and the con-

tract of sale was never consummated.    4. Peter Bush, the mort-
gagee, held the mortgage for the benefit of James Smith, who
was in fact the real mortgagee.    Bush was present at, and a
party to, the agreement by which the mortgaged premises were
conveyed to James Smith in satisfaction of the mortgage debt.
This conveyance operated as a release of the equity of redemp-
tion to James Smith, who was in fact the mortgagee.    5. James
Smith having re-entered and resumed the possession as mort-
gagee or under the mortgagee, with a conveyance of James
Cunningham's equity of redemption, (if he had any,) and the
defendant William Knight deducing a regular title from James
Smith, the complainant is not entitled to be endowed of the one
third part of the premises until she pays, or offers to pay, a due
proportion of the mortgage debt.    ( *Van Dyne* v. *Thayer,* 19
*Wend.* 164 ; *S. C.* 12 *Id.* 234.    *Bell* v. *Mayor of New- York,*
10 *Paige,* 50, 67.    4 *Kent's Com.* 44, 45.    *Swain* v. *Perine,*
5 *John. Ch.* 482.)    6. The proof shows that James Cunning-
ham, the husband of the complainant, never paid any part of
the purchase money.    In equity, therefore, he never had any
seisin or property in the premises in question.    7. The admis-
sions and declarations of the husband are competent evidence
in bar of the widow's claim for dower, as they would be in bar
of her title as heir or grantee.    ( *Van Dyne* v. *Thayer,* 14 *Wend.*
*Rep.* 233.)