## BRUSE v. NELSON *et al.*

Equity: RELEASE OF MORTGAGE THROUGH MISTAKE. Equity will restore a mortgage released through mistake, and give to it its original priority as a lien. Thus : If A holding a mortgage on premises of B, in ignorance of a mortgage subsequently executed to C thereon, release his mortgage and take a new one, equity will as against C or his assignee with notice, restore the lien of the first mortgage.

*Appeal from Tama District Court.*

THURSDAY, OCTOBER 9.

ACTION to foreclose a mortgage. Decree for plaintiff. The defendant Nelson appeals. The facts are stated in the opinion.

*C. B. Bradshaw* for the appellant.

*Stivers & Safely* for the appellee.

DAY, J.— On the 7th day of April, 1869, John Robbins, being the owner in fee of the mortgaged premises, sold and conveyed the same to P. W. Hodson, who in part payment of the purchase-money made and delivered to Robbins three promissory notes, each for the sum of $919.50, respectively payable on the 7th day of April, 1870, 1871 and 1872. On the same day Hodson and wife executed and delivered to Robbins a mortgage on the premises purchased, for the security of said several promissory notes, which mortgage was duly recorded April 8, 1869.

On the 7th day of May, 1869, Hodson and wife executed and delivered to one D. C. Lamb a mortgage upon said premises, to secure said Lamb a prior indebtedness of $800.

About the 1st day of June, 1869, Robbins, in payment of a debt due plaintiff, transferred to him the mortgage executed to secure the purchase-money, and two of the aforesaid notes, to wit: those maturing in 1871 and 1872.

Robbins did not want to assign the notes and mortgage, and Bruse preferred to have the mortgage run directly to him. Hence the parties made the following arrangement: The plaintiff loaned Hodson $131. Hodson executed to plaintiff new notes for $2,000, being the amount of the notes given for the purchase-money, and traded by Robbins to plaintiff, and the said $131. To secure

these new notes, Hodson and wife executed their new mortgage upon said premises. When plaintiff obtained the new notes and mortgage, Robbins entered of record a satisfaction of the mortgage executed to him, and plaintiff delivered back to Robbins said notes and the mortgage securing them. At the time of perfecting the above arrangement plaintiff did not know of the intermediate mortgage to Lamb.

On the 14th day of December, 1869, the defendant L. B. Nelson agreed with D. C. Lamb to pay a certain note which Lamb owed one Alexander Gilchrist, and to cancel an indebtedness which Lamb owed Nelson, in consideration of Lamb's assigning to him the notes and mortgage from Hodson to Lamb. This arrangement was not perfected until July, 1869. Before that time Nelson was informed by Robbins of the circumstances attending the execution of the mortgage to Bruse, and that Bruse claimed his mortgage was entitled to precedence over that to Lamb. He also, before he accepted the assignment, advised with counsel as to the probable effect of the Bruse mortgage. Upon the trial the court decreed that the amount of the mortgage given by Hodson' to Robbins for the unpaid purchase-money is a paramount and prior lien to the Lamb mortgage, and to the rights of Nelson thereunder. From this decree Nelson appeals.

Mistake is one of the fundamental grounds of equitable jurisdiction. Indeed, we understand appellant to concede that the absolute discharge of a mortgage may be set aside if made through mistake. From appellant's argument we quote the following: " The absolute discharge of a mortgage by an express release has rarely been questioned, and the cases in which relief has been granted against their effect are few indeed, and then only in cases of fraud or mistake in procuring such release, and an entire absence of prejudice to third parties." ' We think we shall be able to show that this case answers every condition of the

exceptional cases above referred to. The notes and mortgage to Robbins constituted the first lien upon the property. Robbins sold and delivered these notes and the mortgage securing them to the plaintiff. The evidence shows this clearly. Thus the plaintiff became possessed of the first lien.

He redelivered these notes and the mortgage to Robbins, consented to the release upon the record of the lien of the first mortgage, and took another mortgage from Hodson to secure the amount of these notes and a small additional sum at that time loaned. He did this in ignorance of a most material fact, to wit: that an intermediate mortgage had been made to Lamb to secure the sum of $800. "Mr. Jeremy defines mistake, in the sense of a court of equity, to be, 'that result of ignorance of law or of fact, which has misled a person to commit that, which, if he had not been in error, he would not have done.'" Story's Eq. Juris., § 110, note 1. Who can doubt that, if the plaintiff had known of the existence of the Lamb mortgage, he would not have consented to the releasing of the prior mortgage, and the taking of a subsequent one? It is true the plaintiff does not testify that he would not have made this arrangement, if he had known of the existence of the intermediate mortgage. And it is also true that a court is not at liberty to infer facts not proved. But evidence of a mere mental condition or intention is entitled to but little weight. And a court is always at liberty, and indeed is required to draw all the inferences which logically and naturally follow from facts proved. Reasonable diligence, caution and prudence in the management of one's own business is a law of human conduct. This law is presumed to govern the conduct of a particular individual until he is shown to be an exception to the rule, and the burden of establishing the exception is upon the party claiming the benefit of it. The plaintiff is not shown to fall under the exception.

It is not an act of reasonable prudence and caution for one having a first mortgage upon property, without consideration or other apparent motive, to release it, and take a new mortgage, subject to a prior lien, amounting to almost one-half as much as the sum to him secured. From the facts established in this case, that the plaintiffs, having a mortgage on real estate to secure a little over $1,800, caused the same to be released, and took a new mortgage, in ignorance of the fact that a mortgage, subsequent to the first, but prior to the second, existed upon the property for the amount of $800, it is natural that the mind should make some inference, not of *facts*, but of a *conclusion* from the facts already known.

There are two inferences of an opposite character which may be drawn : First, that the conduct of the plaintiff would have been the same if he had known all the facts ; second, that the plaintiff would not so have acted, if he had not been in ignorance of a material fact. The first inference is opposed to all we know of the rules governing human action ; the second is in entire harmony with them. Hence we feel authorized to infer that plaintiff would not have consented to the release of the first mortgage, if he had known of the mortgage to Lamb. But it is urged, that the Lamb mortgage was of record, and plaintiff had constructive notice of it, and therefore cannot be relieved. This position proves too much. In order that a debt may attach as a lien prior to a mortgage, it must always, in some way, appear of record, so that in every case in which the claim is in a condition to be asserted in preference to the mortgage, the mortgagee has the means of ascertaining its existence. The argument, then, would amount to this, that a mortgage released in mistake could never be restored against a prior claim, which was in a condition to become a lien. In other words, that the lien of the mortgage could never be restored, except when the restoration is unnecessary and unimportant.

Vol. XXXV. — 21.

Bruse v. Nelson.

Lamb took his mortgage after the mortgage from Hodson to Robbins was on record. He, therefore, can sustain no prejudice by the revival of the lien of the first mortgage. The evidence shows clearly that Nelson, before the completion of his purchase, not only had information sufficient to put him on inquiry, but was fully advised of all the circumstances attending the release of the first mortgage, and the execution of the second, and that Bruse claimed a priority for his mortgage. Under the circumstances, he cannot stand in a better position than that occupied by Lamb. We are clearly of opinion that the decree of the court below is right, and should be

Affirmed.

BECK, C. J., dissenting.

I. I concede that if the release of the mortgage had been made through mistake it would be the duty of a court of equity to disregard it and set it aside. But the mistake must be of some matter leading to and influencing the execution of the release. If it was as to a matter which did not affect the action of the party it cannot be the basis of equitable relief. Now it is claimed in the foregoing opinion that the ignorance of plaintiff of the existence of the second mortgage was an element which influenced his action in assenting to the release. Here is the fact constituting the alleged mistake. The fact is established in the minds of my brothers by inference alone. It is not pretended that there is a particle of proof to be found in the record tending to establish the position that plaintiff was in any way influenced by a belief or supposition that the instrument canceled was the only mortgage on the property or that he would not just as readily have assented to the release had he possessed full knowledge of the second mortgage. It is intimated in the opinion of the majority that such a course would have been unreasonable and wanting in ordinary prudence. Such it may have been. Are we to pre-

sume that the acts of men in business affairs which are unreasonable and imprudent are always the result of mistakes? The rules of neither equity nor law are woven into any such mantle of charity to cover the carelessness, blunders or stupidity of men in business transactions. That there was in fact a mistake in the transaction is made to rest, in the foregoing opinion, upon the simple inference that plaintiff would not do a thing so against his interest, unless he was mistaken. Now this very inference is in conflict with our own experience upon this bench. We well know that men often knowingly do things in conflict with their best interests, for upon just such transactions arise many of the disputes which are finally settled here.

But I deny that, under the well-established rules of equity, a mistake may be established upon such inference. Before this court can relieve against a mistake, it must be clearly made out by satisfactory proof. 1 Story's Eq., § 157; *Ring* v. *Ashworth*, 3 Iowa, 452. I do not claim that the mistake must be expressly proved, but if it may be fairly implied from the nature of the transaction, it will be considered established. 1 Story's Eq., § 162. To my mind there is not a fair and reasonable inference to be based upon the evidence, that plaintiff executed the release solely because of his ignorance of the second mortgage.

It is not pretended that the release itself was made through mistake or procured by fraud. That it was made in pursuance of the wishes of plaintiff and all the parties concerned, and under an agreement to that effect, I have no doubt. This will clearly appear from the evidence upon this point found in the record. The only evidence thereon is the testimony of Robbins and the plaintiff. Robbins states that being indebted to plaintiff he agreed to transfer his claim on Hodson. He then states, using his own language, "I did not want to sign them (the notes and mortgage) over to Bruse, and Bruse said he would rather have the mortgage run directly to him; so I went

with Bruse to Hodson, and they agreed to make a new mortgage. The mortgage to me was then on record. I told Mr. Bruse and Mr. Hodson that when the new mortgage was made to Bruse and he was satisfied, I would cancel the old one. Afterward Bruse told me he was satisfied. Hodson exhibited the new notes and mortgage to me. I then canceled the old one."

Plaintiff in his evidence states that Robbins being indebted to him, in payment gave him the notes of Hodson secured by the mortgage. He further testifies in these words: "Hodson agreed to give new notes and mortgage for $2,000, if I would loan him $131 and surrender to him the old notes and mortgage. Under that agreement these notes and mortgage were executed." He also states " When Hodson gave me the new notes and mortgage, I gave the old notes and mortgage up."

The foregoing is all the evidence as to the understanding and agreement of the parties leading to the execution of the writing in satisfaction of the mortgage. It very satisfactorily appears that the parties agreed and intended to satisfy and discharge the mortgage, and I am not authorized to infer that they misapprehended the effect of this act. We are not warranted in the conclusion that either plaintiff or Hodson intended to keep alive the lien of the old mortgage; on the contrary, we are explicitly informed by the evidence that they desired it to be canceled. Certainly if such were their intentions and they have been carried out by the written release, this court cannot restore the lien of the canceled instrument.

II. It is insisted that Nelson had notice of the facts constituting plaintiff's equity and right of priority before he completed the purchase of the notes and mortgage given to Lamb. It is proved that at the time he entered into the contract to pay the debt owed by Hodson to another, he had no other knowledge on the subject than that the mortgage to Robbins was satisfied of record.

Before consummating the transaction, he learned that Bruse claimed his mortgage was a prior lien, and was informed by Robbins of the character of the understanding and agreement between the parties touching the execution of the second mortgage. It may be admitted that he had full notice of this agreement. As we have seen, it was to the effect that the mortgage should be canceled. He was fully authorized to presume the parties would abide by their agreement, and that the instrument would now be regarded by them as a lien upon the land. With such knowledge he could not have been warned by prudence not to purchase the notes secured by the second mortgage.

III. But it is urged, the evidence establishes the fact that Bruse, when he agreed to the cancellation of the first mortgage, had no knowledge of the subsequent incumbrance. But that mortgage was on record, and he is chargeable with constructive knowledge as of any other subsequent incumbrance. His ignorance of a fact which, with the exercise of common prudence, he could have known ought not to prejudice the rights of others. Nelson purchased the Lamb mortgage on the faith of the validity of the cancellation of the first mortgage, which was authorized by plaintiff's express agreement. Surely he ought not now to be defeated of his rights by the fact that plaintiff was in ignorance of a matter, the knowledge of which may have influenced him to insist upon keeping alive the lien of the first mortgage. Equity does not relieve against ignorance and mistakes of this character.