[Filed February 22, 1892.]

JOHN PEARCE ET AL. *v.* T. C. BUELL ET AL.

FRAUD — ALLEGATA AND PROBATA — FAILURE OF PROOF. — Where a party seeks relief on the ground of fraud perpetrated by another, he must not only allege, but must also prove, that he relied upon, and was innocently, on his part, misled by the fraudulent statements of the other party; and unless the evidence shows this, there is a failure of proof.

EQUITY — MISTAKE — RESTORATION OF CANCELLED MORTGAGE. — If a holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, although such lien be of record, equity, looking to substance rather than form, will, where the rights of third parties have not been prejudiced, disregard the cancellation of the former mortgage and restore it to its original priority.

Douglas county: M. L. PIPES, Judge.

Defendants appeal.    Modified.

*J. C. Fullerton,* and *E. B. Preble,* for Appellants.

*J. W. Hamilton,* and *W. R. Willis,* for Respondents.

BEAN, J.—This is a suit, on the ground of fraud and mistake, to set aside a conveyance made by the defendant Buell and wife to Truman and Francis Hyde, who are joined as plaintiffs with John Pearce, and to reïnstate a mortgage given by Buell and wife to Pearce prior to the date of the conveyance from Buell to the Hydes.

The facts material for the decision of the case are these: On May 3, 1889, the defendant Buell and wife executed to plaintiff Pearce a mortgage upon the premises described in the complaint to secure the payment of an indebtedness of $1,129 with interest at the rate of eight per cent per annum, as evidenced by a certain promissory note for that amount due one year after date, which mortgage was on the same day duly recorded. On August 14, 1889, the defendants S. Marks & Co. recovered a judgment by confession against defendant Buell for $1,251, which on the same day was duly entered in the judgment lien docket. On July 21, 1890, the plaintiffs Hyde, desiring to purchase, and the defendant Buell to sell, the mortgaged premises, it is alleged "that Buell falsely and fraudulently and with intent to cheat and defraud Pearce and the Hydes, represented to them that there were no liens or incumbrances upon said premises except the mortgage lien of plaintiff Pearce; and relying upon these representations and induced thereby," the said Hydes purchased said property, agreeing to pay therefor the sum of $1,300, in manner following: To assume the payment of $900 of the mortgage debt of Pearce, and to execute their note secured by mortgage upon the premises therefor; to pay $334 in money to Pearce on said debt, and the remainder of the purchase price, $66, to pay to said Buell. In pursuance of this agreement, Buell conveyed the property to the Hydes, and they executed their note and mortgage to Pearce for $900; paid him $334 in money, and paid the remaining $66 to Buell. Pearce, induced by and relying upon the representations of Buell that the premises were free from all liens or incumbrances except

his mortgage, and in ignorance of the lien of Marks & Co., as a matter of accommodation to and for the convenience of Buell and the Hydes, accepted the note and mortgage of the Hydes and cancelled his former mortgage upon the record without intending in any way to relinquish his first lien upon the premises for the balance due him. Afterwards Marks & Co. caused an execution to be issued upon their judgment, and were proceeding to sell the land thereunder when this suit was brought to cancel the deed from Buell to the Hydes and reïnstate Pearce's mortgage. By its decree the court below reïnstated Pearce's mortgage for the entire amount originally due thereon and interest, cancelled and set aside the satisfaction thereof on the record, cancelled the deed from Buell to the Hydes and the note and mortgage given by them to Pearce, and ordered that the sum of $455 paid by the Hydes to Pearce on his mortgage be returned to them. From this decree defendants appeal.

Although Pearce and the Hydes have joined in this suit as plaintiffs, their interests are separate and must be so considered by us.

The plaintiffs Hyde base their right to relief upon the alleged fraudulent representations of Buell concerning the liens upon the premises purchased by them, and their reliance upon the same in making the purchase. They have not testified in the case, nor is there any evidence whatever in the record, so far as we can ascertain, supporting or even tending to support the allegations of the complaint in this respect. It is true the evidence shows that Buell stated at the time of the sale and purchase that there were no liens or incumbrances on the land except Pearce's mortgage; but whether they were ignorant of the actual facts or relied upon this representation does not appear. The complaint is not verified by them, but by their co-plaintiff Pearce, so that it no where appears in the record that the Hydes are willing to swear that the representations of Buell in any way induced them to purchase

the land. For aught that appears in this record, they may have been fully informed, either from an examination of the record or from other sources of information, that Marks & Co. held a judgment lien against the land they were purchasing. If so, certainly they can not have the sale set aside on account of any representations of Buell in relation to the matter, even if false. The burden of proof is upon them, and they must prove the allegations of their complaint by a preponderance of the evidence before they can prevail in this suit. This they have not done or even attempted to do, and there is an entire failure of proof on their part. So much of the decree of the court below as is in their favor must therefore be reversed for want of evidence to support it.

Passing now to the case as made by the plaintiff Pearce, it clearly appears from the testimony that he accepted the note and mortgage from the Hydes for the balance due from Buell and cancelled the former mortgage on the record under a mistake and in ignorance of the lien of Marks & Co., and with no intention of waiving his prior lien. This was but a mere change in the form of the indebtedness growing out of the fact that Buell had sold the mortgaged premises to the Hydes who were to pay the Pearce mortgage as part of the consideration, and therefore, as a matter of convenience, the new note and mortgage from the Hydes was given. This mere change in the form of the indebtedness did not operate as a payment of the Buell mortgage or discharge the lien, because it was evidently not so intended by the parties.

"No change in the form of indebtedness or in the mode of payment will discharge the mortgage. A mortgage secures the debt and not the note or bond, or other evidence of it. No change in the form of the evidence, or the mode or time of payment, nothing short of actual payment of the debt or an express release will operate to discharge the mortgage." (Jones Mort. § 924.) This is so both between

the parties and as to a subsequent lien holder. (Id. § 927.)

Nor did the giving of a new note with the names of the Hydes in place of Buell operate as a waiver of the original mortgage. (Jones Mort. § 929; *Pond* v. *Clarke,* 14 Conn. 334; *Hyde* v. *Tanner,* 1 Barb. 75.)  In such case a court of equity will look through the form to the substance and keep alive the original security if it can be done without injury to third parties. No rule of law is better settled than if the holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, although such lien · be of record, equity will, in the absence of the intervening rights of third parties, restore the lien of the first mortgage and give it its original priority. (Jones Mort. § 972; *Geib* v. *Reynolds,* 35 Minn. 331; *Bruse* v. *Nelson,* 35 Iowa, 157 ;. *Downer* ·v. *Miller,* 15 Wis. 677; *Vannice* v. *Bergen,* 16 Iowa, 555 ;. 85 Am. Dec. 531 ; *Robinson* v. *Sampson,* 23 Me. 388 ; *Corey* v. *Alderman,* 46 Mich. 540 ; *Cansler* v. *Sallis,* 54 Miss. 446.)

The fact that the mortgage was released in ignorance cf the existence of the intervening lien, is in equity deemed such a mistake of fact as to entitle the party to relief, although such lien may have been of record. (*Bruse* v. *Nelson, supra; Cobb* v. *Dyer,* 69 Me. 494; *Geib* v. *Reynolds, supra.*)

To restore the mortgage of Pearce as a lien upon the mortgaged premises for the amount due him prior and paramount to the lien of Marks & Co., is but to prevent manifest injustice and hardship, and interferes with no superior intervening equities. The lien of Marks & Co. was obtained prior to the release of Pearce's mortgage, and therefore they have not in any way been misled by the discharge of the mortgage. They have advanced no new consideration in consequence of such release or changed their position in any way. With the mortgage restored

for the amount due Pearce, they will be in the same posi-
tion as before the cancellation, no better and no worse.   It
would be inequitable and unjust to permit them to take
advantage of plaintiff's mistake in cancelling his mortgage.
The cancellation of a mortgage is but *prima facie* evidence
of its discharge, and it may be shown that it was made by
mistake, as is clearly the fact in the case here.   Under such
circumstances, Marks & Co. have no equity or claim to
resist the older and superior equity of Pearce to a restora-
tion of his original rights.   The principle running through
all the cases of this class, says BARCULO, J., "is, that when
the legal rights of parties have been changed by mistake,
equity restores them to their former conditions when it can
be done without interfering with any new rights acquired
on the faith and strength of the altered condition of the
legal rights, and without doing injustice to other persons."
(*Barnes* v. *Camack*, 1 Barb. 392.)   In such cases a court of
equity will look through the form to the substance of the
transaction and keep an incumbrance alive, or consider it
extinguished as will best serve the purposes of justice and
the intention of the parties. (*Barnes* v. *Camack, supra;*
*Starr* v. *Ellis*, 6 Johns. Ch. *393.)   It follows therefore that
plaintiff Pearce is entitled to a decree reïnstating his mort-
gage as a lien upon the premises described in the complaint
for the amount due him, to wit, $745, with interest at the
rate of eight per cent per annum from July 21, 1890, prior
and paramount to the lien of the judgment recovered by
Marks & Co. against Buell, and if the parties so desire, a
decree of foreclosure may be entered here.

The decree of the court below is therefore modified as
indicated in this opinion, neither party to recover costs in
this court.