Argued April 2; decided April 29, 1895.

## KERN *v.* HOTALING.

[40 Pac. 168.]

1. RESTORATION OF CANCELED MORTGAGE.— A mortgagee who cancels a mortgage and takes a new one in lieu thereof, without knowledge of an intervening lien, even though it be of record, may have the lien of his first mortgage restored to its original priority, and so enforced: *Pearce* v. *Buell*, 22 Or. 33, approved and followed.

2. PRIORITY OF LIENS — PURCHASE MONEY MORTGAGE.— A lien placed on a parcel of land in anticipation of acquiring the title will be in equity subordinated to a mortgage given for part of the purchase price, for the lien can attach only to whatever title the lienor acquires, and in such a case it is considered that he gets the title with the purchase money mortgage attached to and inhering in it.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

This case arises out of the following state of facts: During the summer of eighteen hundred and ninety, the plaintiff J. W. Kern negotiated with Frank Sperling, who was then the agent of the New York Life Insurance Company, for insurance on his life to the amount of fifty thousand dollars. Plaintiff at the same time sold to Sperling block eighteen in Waverly Tract in Multnomah County, in consideration of the first payment of premium on said insurance, amounting to two thousand six hundred and sixty-five dollars, and a sum additional thereto of three thousand eight hundred and thirty-five dollars. On September thirteenth, eighteen hundred and ninety, plaintiff executed and acknowledged a deed to Sperling for said block eighteen, and three days thereafter Sperling executed and acknowledged a mortgage to plaintiff upon the same property to secure the payment of said sum of three

thousand eight hundred and thirty-five dollars. Two notes were given for the amount, bearing date as of June twenty-fourth, eighteen hundred and ninety, one for the sum of two thousand six hundred and sixty-five dollars, payable in one year, and the other for one thousand one hundred and seventy dollars, in two years from date, both bearing interest at eight per cent. per annum, and copies thereof incorporated in the mortgage. It being necessary to procure the insurance policy from New York before the negotiations could be finally closed, the deed, mortgage, and notes were deposited with Charles Hirschtel and Thomas Connell in escrow, to be held by them until the policy could be obtained. On October thirtieth, eighteen hundred and ninety, the policy having in the mean time been secured, the papers were delivered to the respective parties entitled thereto, and the deed and mortgage duly recorded in the office of the recorder of conveyances for Multnomah County. The reason for dating the notes as of June twenty-fourth, eighteen hundred and ninety, was that the first payment of premium was made payable on that date, and additional premiums were payable annually thereafter. On October twenty-eighth, eighteen hundred and ninety, the defendant, the A. P. Hotaling Company, loaned to Sperling five thousand dollars, payable one day after date, and took as security therefor a deed of general warranty from Sperling to the same property. This deed was recorded May sixteenth, eighteen hundred and ninety-two. Plaintiff collected two years' interest on Sperling's notes, but, being unable to make further collection, took the notes to Lent and McGrew, real estate agents and brokers, some time prior to May twenty-second, eighteen hundred and ninety three, and instructed them to collect what they could, and if they could not collect the principal to get the interest and taxes, and to renew the notes, giving an extension of one year, with interest payable

quarterly at the rate of ten per cent. per annum. In obedience to this instruction, Lent and McGrew collected the interest and taxes to May twenty-second, eighteen hundred and ninety-three, and upon that day procured a new note from Sperling for the full amount of the principal, aggregating three thousand eight hundred and fifty dollars, payable to T. S. McDaniel, a member of their firm, in one year, with interest at ten per cent. per annum, payable quarterly as instructed. To secure the payment of this note Sperling and wife gave McDaniel a mortgage upon said block eighteen. On the same day or the next the note and mortgage were indorsed "without recourse" to plaintiff by McDaniel, and on May twenty-third, eighteen hundred and ninety-three, plaintiff caused the mortgage to be recorded. On May twenty-seventh, eighteen hundred and ninety-three, plaintiff canceled of record Sperling's first mortgage, dated September sixteenth, eighteen hundred and ninety. The note and mortgage were executed to McDaniel instead of plaintiff as a matter of convenience in transacting the business in hand, and McDaniel never had any pecuniary or other interest therein. Before taking the new note, Lent and McGrew required Sperling to furnish them with an abstract of title to the premises subsequent to the date of the old mortgage. This Sperling did, showing a clear title, with the exception of some taxes, the abstracter having overlooked the deed to the A. P. Hotaling Company. Relying upon this abstract, the new mortgage was accepted and recorded, and the old one canceled, in ignorance of the A. P. Hotaling Company's deed. Early in June, eighteen hundred and ninety-three, plaintiff discovered the condition of the record, and, after vainly endeavoring for some time to obtain a settlement, on June twenty-second brought this suit to have the cancellation of the old mortgage set aside and revoked upon the ground that it was

made through inadvertence and mistake; also to have said old mortgage reinstated, and the same foreclosed and declared a prior and superior lien to that of defendant the A. P. Hotaling Company. The decree of the court below being in accordance with the prayer of the complaint, the A. P. Hotaling Company appeals.

AFFIRMED.

For appellant there was a brief by *Messrs. Dolph, Mallory and Simon,* and an oral argument by *Mr. Joseph Simon.*

It will be observed that all the cases cited by plaintiff are cases where the second mortgagee took his mortgage with full knowledge of the fact that there was a prior mortgage upon the premises, and where he expected to obtain a second lien thereon, and such authorities proceed upon the theory that it would be inequitable to give the second mortgagee a better position than he had intended to obtain or had contracted for when he took his mortgage. In the case decided by our own supreme court, *Pearce* v. *Buell,* 22 Or. 29, the lien therein referred to, which obtained priority by reason of the cancellation of the first mortgage, was a judgment lien, and was obtained with full knowledge of the fact that a prior mortgage existed on the premises. The case at bar is widely different from this class of cases and the equities here are very much stronger. The appellant, at the time it obtained its conveyance from Sperling and loaned him five thousand dollars, expected to get and Sperling contracted to give to it a first lien upon the land, and appellant had no knowledge whatever or reason to believe that the land was subject to the Kern mortgage, and would not have accepted the conveyance made to it by Sperling, or paid him the five thousand dollars, if it had suspected that its lien was not to be the first lien against the land. It will thus be seen that the Hotaling Company is not seeking to advance its

position or place itself in any more favorable attitude than it had expected to obtain or contracted for, by the alleged mistake of plaintiff in canceling his mortgage; but its purpose is to retain the position that it is in by reason of such cancellation in view of the fact that Sperling had contracted to give it, and it understood that it was obtaining a first lien upon the property at the time it took its conveyance. In a case of this kind the equitable doctrine, where the equities are equal the law must prevail, ought to obtain.

A junior mortgage taken without notice of a prior one, and first recorded, is to be preferred to a mortgage prior in its execution, but subsequently recorded: *Neslin* v. *Wells,* 104 U. S. 428; Jones on Mortgages, §§ 558–560.

The release of the mortgage deliberately made by the plaintiff extinguished that mortgage and let in the deed made by Sperling to the defendants as a first lien on the property. In a controversy with strangers to the instrument parties cannot insist that it does not express what it was intended to express, and against a subsequent mortgagee, having equal equities because of having parted with value upon the assurance that he was getting a first lien, a mistake causing the cancellation cannot be shown and reformed: Pomeroy's Equity Jurisprudence (2d ed.), § 871; *Wooler* v. *Hiller,* 9 Gill (Md.), 185; *Neidig* v. *Whiteford,* 29 Md. 178.

The jurisdiction of a court of equity extends to granting relief where the instrument has been surrendered or discharged, or any encumbrance or charge has been satisfied through mistake, and said relief granted has wholly replaced the party entitled in his original position, either by setting aside the formal discharge, or by compelling a reëxecution of the instrument, but the affirmative relief or reformation and the cancellation are, however, subject to the limitation that they are never conferred against a

*bona fide* purchaser for value and without notice: Pomeroy's Equity Jurisprudence (2d ed.), §§ 871, 776. Where there is equal equity the law must prevail: Pomeroy's Equity Jurisprudence (2d ed.), §§ 416, 417, 591; *Kilpatrick v. Strozier,* 67 Ga. 247; but equity will not interfere to correct or cancel a conveyance for a mistake of· the parties, where such correction or cancellation would affect the rights of third parties: Jones on Mortgages (3d ed.), § 966; Story's Equity Jurisprudence (13th ed.), §§ 165, 64c, 108, and 381; *Barta* v. *Garmo,* 1 Sand. Ch. 383.

For respondent there was a brief by *Messrs. Cleland and Cleland,* and an oral argument by *Mr. John B. Cleland.*

Opinion by MR. JUSTICE WOLVERTON.

1. There is no essential dispute as to the facts in the case and the only question is as to whether, under this statement, the plaintiff is entitled to the relief demanded. ''When a new mortgage is substituted in ignorance of an intervening lien, the mortgage released through mistake may be restored in equity, and given its original priority as a lien'': Jones on Mortgages, § 971. This is the doctrine of many cases. In *Young* v. *Shaner,* 73 Iowa, 555, (35 N. W. 629,) the defendants John H. Shaner and Sarah B. Shaner were the owers in common of a parcel of land which they mortgaged to Young to secure the payment of four hundred dollars money borrowed. Thereafter Witmer Brothers recovered judgment against John H. Shaner, who subsequently conveyed his interest to Sarah B. The latter then applied to Young for an additional loan of two hundred dollars, and to secure time on the old loan of four hundred dollars executed her note for six hundred dollars, and to secure the same executed a new mortgage upon the premises, which Young accepted, and canceled the old mortgage, in ignorance of the Witmer

Brothers' judgment. The court held that the new mort-
gage, to the amount of the old, was to be regarded as a
mere renewal, and that Young was entitled to have such
amount declared as a lien superior to the Witmer Broth-
ers' judgment, citing *Bruse* v. *Nelson,* 35 Iowa, 157, as in
point, and as decisive of the case. The holding of the
latter case is in effect that if A, holding a mortgage on
the premises of C, in ignorance of a mortgage subse-
quently executed by C thereon, release his mortgage, and
take a new one, equity will, as against C, or his assignee
with notice, restore the lien of the first mortgage. In
this case an additional loan of one hundred and thirty-
one dollars was obtained, but the court declared the lien
to be superior, to the extent of the original indebtedness,
to the mortgage subsequently executed. *Geib* v. *Reynolds,*
35 Minn. 331, (28 N. W. 929,) was a case wherein plaintiff
brought suit as administrator of Dietrich Thole, deceased,
to foreclose a certain mortgage, and to have it declared
a lien superior to the lien of defendants. It appears that
on May fifth, eighteen hundred and seventy-seven, Diel-
ing and wife executed to Thole a mortgage on certain
premises to secure the payment of two thousand dollars,
in accordance with the conditions of a promissory note
payable three years after date, bearing ten per cent. in-
terest. The mortgage was recorded July ninth, eighteen
hundred and seventy-seven. On May fifth, eighteen hun-
dred and eighty-one, the debt not having been paid,
Dieling executed a new note to Thole in renewal of the
old loan, for the same amount, payable three years after
date, with eight per cent. interest for two years and
seven per cent. for the third, and executed a new mort-
gage to secure the same. The old note and mortgage
were surrendered to Dieling, but the new mortgage was
not recorded by Thole until December twenty-first,
eighteen hundred and eighty-one, nor was the old mort-

gage satisfied until that date. On September eighth, eighteen hundred and eighty-one, Dieling borrowed of Reynolds two thousand dollars, and also of Benjamin V. Quackenbush one thousand one hundred dollars, through one Livingston Quackenbush, who was their agent, and executed a mortgage to each of said parties to secure their respective loans, which were recorded September twentieth, eighteen hundred and eighty-one. At the time of obtaining these loans Dieling exhibited to the agent the first note and mortgage to Thole, and told him that the mortgage, note, and debt had been paid, and the agent, relying upon the statement, made the loans. Presumptively, Thole had no notice of the execution and record of these mortgages when he canceled the old mortgage of record. The court say: "They (Reynolds and Quackenbush) acquired their rights before the discharge of the record of the Thole mortgage, and not upon the faith of that discharge. They are not, therefore, in position to insist that they are injured by annulling that discharge. When a prior mortgage has been, by fraud or mistake, discharged of record, a subsequent mortgagee, who became such anterior to such discharge, cannot claim to be injured by setting aside the release, and restoring the mortagee to his rights. * * * It is a familiar rule that if a holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, equity will, in the absence of some special disqualifying fact, restore the lien of the first mortgage, and give it its original priority. * * * The fact that the mortgage was released in ignorance of the existence of the intervening lien is deemed such a mistake of fact as to entitle the party to relief, and this although such intervening lien was of record at the time." It was accordingly held that Thole's mortgage was a

superior lien to those of Reynolds and Quackenbush. In support of this doctrine see also *Robinson* v. *Sampson,* 23 Me. 388; *Cobb* v. *Dyer,* 69 Me. 494; *Barnes* v. *Mott,* 64 N. Y. 397 (21ªAm. Rep. 625); *Hutchinson* v. *Swartsweller,* 31 N. J. Eq. 205; *West's Appeal,* 88 Pa. St. 341; *French* v. *De Bow,* 38 Mich. 709; *Stimpson* v. *Pease,* 53 Iowa, 572 (5 N. W. 760); Jones on Mortgages, §§ 966, 971.

It is clearly deducible from these authorities that the fact that the new note executed for the aggregate amount of the two former notes bears interest at an increased rate, and the further fact that the note and mortgage was made payable to McDaniel instead of Kern, could have no significance, where it is manifest that it was the intention of the parties that the new note and mortgage should operate as a continuance of the old indebtedness, and not as a payment or discharge thereof. In *Pearce* v. *Buell,* 22 Or. 33, (29 Pac. 78,) a case in point, BEAN, J., says: "In such a case a court of equity will look through the form to the substance, and keep alive the original security, if it can be done without injury to third parties. No rule is better settled than that if the holder of a mortgage take a new mortgage as a substitute for a former one, and cancel and release the latter, in ignorance of the existence of an intervening lien upon the mortgaged premises, although such lien be of record, equity will, in the absence of the intervening rights of third parties, restore the lien of the first mortgage, and give it its original priority." It is also settled that the acceptance of a note is not payment of an account, nor is the acceptance of one note in renewal of another payment thereof, unless it is so expressly agreed between the parties: *Black* v. *Sippy,* 15 Or. 576 (16 Pac. 418); see also *Geib* v. *Reynolds,* 35 Minn 331. And nothing short of actual payment of the debt or an express release will operate to discharge the mortgage: *Pearce* v. *Buell,* 22 Or. 33 (29 Pac. 78); Jones on Mortgages,

§ 924, That plaintiff canceled his old mortgage by mistake, and in ignorance of the A. P. Hotaling Company's deed, there is no doubt. Nor was he guilty of negligence in any degree in not discovering it of record, as he required an abstract of the record before he would consent to the renewal and a postponement of the time of payment. The abstract showing the record clear, Lent and McGrew, the agents of plaintiff, renewed the note and mortgage, granting an extension of time of payment, through the instrumentality of McDaniel, one of their firm. There was no agreement or understanding that the new note and mortgage should be accepted in payment of or in discharge of the old notes, nor was it so intended or understood by the parties, and consequently there was no payment or discharge of the old indebtedness.

2. The deed under which the rights of the defendant, the A. P. Hotaling Company, accrued was executed October twenty-eighth, eighteen hundred and ninety, two days prior to the recording of plaintiff's old mortgage. Indeed, Kern's deed to Sperling had not been delivered or recorded at the time, and hence he had no interest which he could then convey or mortgage, and the company's deed could only take effect upon an after acquired title. Plaintiff had no knowledge of the Hotaling Company's equity when he delivered the deed to Sperling, and he accepted the mortgage in return in good faith for value. This is not disputed. Sperling's title being thus encumbered with plaintiff's mortgage, the A. P. Hotaling Company therefore acquired its equity subject to such encumbrance. This being the condition of the company's lien prior to the execution of the new mortgage and the cancellation of the old, it has acquired no new rights by reason of the fact that the old mortgage was, through mistake and in ignorance of its equity, canceled of record, nor in reliance upon such cancellation. The maxim that

where the equities are equal the law will prevail can have no application because the equities are unequal by reason of the fact that the plaintiff possesses a prior and superior equity. A lien discharged by mistake is in contemplation of equity still in existence, *French* v. *De Bow*, 38 Mich. 709, and the A. P. Hotaling Company has acquired no additional equity in reliance upon the mistake of plaintiff. Hence plaintiff's superior equity will prevail.

It was also contended by appellant that the equities of plaintiff and the A. P. Hotaling Company were acquired concurrently, and that, such being the case, the land should be adjudged as a common fund for the indemnity of both parties, under the authority of *Fleischner* v. *Sumpter*, 12 Or. 166 (6 Pac. 506). While, in a sense, the equities of these parties became effective at the same time, simply because of the peculiar circumstances under which the respective deeds and the mortgage were delivered, yet we have seen that the plaintiff took a superior equity, which has not been surrendered or impaired through his mistake or inadvertence, and no disadvantage accruing to the company through such mistake, there was no error in granting the relief demanded by plaintiff, and the decree of the court below will therefore be affirmed.

AFFIRMED.

Decided at PENDLETON, July 20, 1895.