Argued and submitted November 30, 1998, reversed and remanded
December 29, 1999

David DIMEO,
*Respondent,*

*v.*

Darren B. GESIK,
*Defendant,*

*and*

Joseph E. CHRISMAN
and Bonita Jewell Chrisman,
*Respondents,*

*and*

WESTERN BANK,
a division of Washington Mutual,
*Appellant.*

(97-2918; CA A100631)

993 P2d 183

■

Douglas R. Holbrook argued the cause and filed the opening brief for appellant. With him on the reply brief was Litchfield & Carstens LLP.

Thomas H. Anderson argued the cause and filed the brief for respondent David Dimeo.

No appearance for respondents Joseph E. Chrisman and Bonita Jewell Chrisman.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.*

LANDAU, P. J.

■

---

* Brewer, J., *vice* Warden, S. J.

## LANDAU, P. J.

Plaintiff Dimeo initiated this action for judicial foreclosure of a trust deed securing a promissory note. Defendant Western Bank also asserted an interest in the real property at issue based on a subsequent trust deed. Western Bank contended that, although its trust deed was later in time than Dimeo's, it nevertheless was entitled to first priority under the doctrine of equitable subrogation, because it reasonably believed that Dimeo's lien had been discharged. The trial court entered summary judgment in favor of Dimeo, and Western Bank appeals. We reverse and remand.

In reviewing a summary judgment, we determine whether there are any issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). The fact that this case involves equitable remedies does not alter that standard of review. *Cochran v. Connell*, 53 Or App 933, 938-39, 632 P2d 1385, *rev den* 292 Or 109 (1981).

The following facts are not in dispute. Dorcia Johnson originally owned the property. In March 1995, Johnson sold the property to Gesik, subject to two trust deeds that Johnson had placed against the property. In August 1995, Gesik gave a trust deed to the property to Dimeo to secure a $100,000 loan. In February 1996, Gesik gave a trust deed to the property to the Chrismans to secure another $100,000 loan. All parties' interests were properly recorded.

Meanwhile, in September 1996, Western Bank offered Gesik a $110,000 home equity line of credit, conditioned on the issuance of a standard title insurance policy showing Western Bank's trust deed in the first position. Western Bank received a preliminary title report from Lincoln County Title and Escrow in late September, showing the Dimeo and Chrisman interests in the property. The branch manager of Western Bank telephoned the title company and told an unidentified representative of the title company that the Dimeo and Chrisman liens "would have to be subordinated to Western Bank's required first trust deed

position or removed otherwise." The representative assured the branch manager that that would occur.

In early October 1996, the bank received a title report from Stewart Title, an affiliate of Lincoln County Title and Escrow. The title report showed Western Bank in first position and made no reference to the Dimeo and Chrisman liens. The bank relied on the title report and disbursed the funds to Gesik who, in turn, used part of the funds to pay off the two trust deeds that Johnson had placed against the property.

Dimeo then initiated this action seeking judicial foreclosure of his trust deed, naming as defendants both the Chrismans and Western Bank. The Chrismans answered, alleging an interest in the property superior to all but Dimeo. Western Bank counterclaimed against Dimeo and cross-claimed against the Chrismans, alleging that it was entitled to superior position by virtue of the doctrine of equitable sub-rogation on the ground that it was justifiably unaware that the Dimeo and Chrisman liens had not been discharged. Western Bank moved for summary judgment on its theory of equitable subrogation. Dimeo also moved for summary judgment, arguing that the bank's reliance on the doctrine of equitable subrogation was unavailing, given that it had not acted in justifiable ignorance of the intervening liens. The trial court allowed Dimeo's motion, denied Western Bank's, and entered judgment accordingly.

On appeal, Western Bank argues that the trial court erred in allowing Dimeo's motion and in denying its motion for summary judgment. According to Western Bank, the doctrine of equitable subrogation gives it priority over the Dimeo and Chrisman liens. The bank insists that it reasonably relied on the title company's final report, which did not disclose the liens. Dimeo argues that the trial court ruled correctly, because equitable subrogation is available only when the party seeking it is actually ignorant of the intervening liens, and the ignorance was not a product of its negligence. According to Dimeo, the bank had actual knowledge of the intervening liens through the preliminary title reports, and it was negligent in disbursing funds without first ascertaining whether those liens had been discharged.

■     The doctrine of equitable subrogation has been described as follows:

> "[I]f the holder of a mortgage take[s] a new mortgage as a substitute for a former one, and cancel[s] and release[s] the latter in ignorance of the existence of an intervening lien upon the mortgaged premises, although such lien be of record, equity will, in the absence of the intervening rights of third parties, restore the lien of the first mortgage and give it its original priority."

*Pearce v. Buell*, 22 Or 29, 33, 29 P 78 (1892). In this case, Western Bank did not take a new mortgage as a substitute for a former one. It did release funds to Gesik, on condition that he use part of the funds to pay off the two trust deeds Johnson had placed against the property. We have previously held that, in such circumstances, the doctrine may apply. *Rusher v. Bunker*, 99 Or App 303, 782 P2d 170 (1989).

■     The doctrine does not apply, however, unless the lender proves that it was ignorant of the existence of the intervening lien and that its ignorance was not a result of inexcusable negligence. *See, e.g., Holzmeyer v. Van Doren*, 172 Or 176, 185, 139 P2d 778 (1943) (party seeking equitable subrogation must have been "ignorant of the existence" of the intervening lien); *Metropolitan Life Ins. Co. v. Craven*, 164 Or 274, 283, 101 P2d 237 (1940) (equitable subrogation available only if "the party advancing the money to defray the prior lien is not guilty of negligence").

In this case, therefore, we must determine whether, as a matter of law, Western Bank was excusably ignorant of the intervening Dimeo and Chrisman liens. There is no dispute that Western Bank initially had actual knowledge of the liens. The preliminary title report revealed the existence of the liens. The bank manager even called a representative of the title company to talk about the necessity of obtaining the discharge of the liens. Not surprisingly, therefore, Western Bank concedes that it had actual knowledge of the liens, at least as of the time of the receipt of the preliminary title report.

Western Bank nevertheless argues that, *at the time that it released the funds*, it was ignorant of the intervening liens, because it had instructed the title company to make

sure that the liens were either paid or subordinated, and because, consistent with those instructions, a final title report made no mention of the liens. Dimeo argues that, as a matter of law, the bank's actual knowledge of the intervening liens cannot have been, in effect, erased by the subsequent title report. According to Dimeo, it was grossly negligent of Western Bank to rely on a subsequent title report that did not explain what had happened to the intervening liens. Western Bank argues that it is routine for lenders to rely on final title reports that provide different information from what was provided in a preliminary title report.

Neither party cites any Oregon authority for the proposition that, under the circumstances before us, it is either negligent or not negligent to rely on a subsequent title report as a matter of law. Western Bank cites an 1894 Minnesota decision, involving a lay person who relied on assurances that liens would be discharged before releasing funds to a borrower. *London and N.W. Mortgage Co. v. Tracy*, 58 Minn 201, 59 NW 1001 (1894). But subsequent Minnesota decisions reveal that banks and other professional lenders are not given the same leniency as lay persons in that regard. *Carl H. Peterson Co. v. Zero Estates*, 261 NW2d 346, 348 (Minn 1977); *see also Universal Title Ins. Co. v. U. S.*, 942 F2d 1311, 1317 (8th Cir 1991).

■　　　It may well be appropriate in certain circumstances to rely on information in a subsequent report. We are not prepared to say that it is *always* and in *all* circumstances appropriate to do so, as a matter of law. In particular, we cannot say that it is always appropriate to rely on a subsequent title report that makes no reference to the disposition of intervening liens that had been reported previously. That said, we are likewise unprepared, on this record, to say that, as a matter of law it was *not* reasonable for Western Bank to have relied on the final title report. The issue simply is not one that can be resolved by way of summary judgment, at least not on a record that contains no information about what is commercially reasonable under these circumstances.

Reversed and remanded.