Argued and submitted December 22, 2011, general judgment on plaintiff's foreclosure claim reversed, otherwise affirmed; supplemental judgment reversed July 11, 2012

EVERGREEN PACIFIC, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

CEDAR BROOK WAY, LLC,
an Oregon limited liability company, et al,
*Defendants,*

*and*

PACIFIC CONTINENTAL BANK,
an Oregon chartered commercial bank,
*Defendant-Appellant,*

*and*

NW KODIAK CONSTRUCTION, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

LUMBERMEN'S, INC.,
a Washington corporation,
*Third Party Plaintiff,*

*v.*

BUILDERS SERVICES, GROUP, INC.,
a Florida corporation,
dba Gale Contractor Services, et al,
*Third Party Defendants.*

Washington County Circuit Court
C095937CV

OSWEGO DRYWALL INSTALLERS, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

CEDAR BROOK WAY, LLC,
an Oregon limited liability company, et al,
*Defendants,*

*and*

PACIFIC CONTINENTAL BANK,
an Oregon chartered commercial bank,
dba Pacific Continental Corporation,
an Oregon corporation,
*Defendant-Appellant,*

*and*

NW KODIAK CONSTRUCTION, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

ARCHITECTURAL BUILDING SERVICES, INC.,
an Oregon corporation,
*Third Party Plaintiff,*

*v.*

LUMBERMEN'S, INC.,
a Washington corporation, et al,
*Third Party Defendant.*

Washington County Circuit Court
C094583CV

NW KODIAK CONSTRUCTION, LLC,
an Oregon limited liability company,
*Plaintiff-Respondent,*

*v.*

CEDAR BROOK WAY, LLC,
an Oregon limited liability company, et al,
*Defendants,*

*and*

PACIFIC CONTINENTAL BANK,
an Oregon chartered commercial bank,
*Defendant-Appellant.*

Washington County Circuit Court
C094731CV

KPMC, LLC,
an Oregon limited liability company,
*Plaintiff,*

*v.*

CEDAR BROOK WAY, LLC,
an Oregon limited liability company, et al,
*Defendants,*

*and*

PACIFIC CONTINENTAL BANK,
an Oregon chartered commercial bank,
dba Pacific Continental Corporation,
*Defendant-Appellant,*

*and*

NW KODIAK CONSTRUCTION, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

Washington County Circuit Court
C095428CV

ACOUSTI-LEVEL FLOOR SYTEMS, INCORPORATED,
an Oregon corporation,
*Plaintiff,*

*v.*

CEDAR BROOK WAY, LLC,
an Oregon limited liability company, et al,
*Defendants,*

*and*

PACIFIC CONTINENTAL BANK,
an Oregon chartered commercial bank,
dba Pacific Continental Corp.,
*Defendant-Appellant,*

*and*

NW KODIAK CONSTRUCTION, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

Washington County Circuit Court
C095856CV

PACIFIC CONTINENTAL BANK,
an Oregon chartered commercial bank,
*Plaintiff-Appellant,*

*v.*

CEDAR BROOK WAY, LLC,
an Oregon limited liability company, et al,
*Defendants,*
*and*

NW KODIAK CONSTRUCTION, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

Washington County Circuit Court
C096831CV; A146478

284 P3d 509

Cody Hoesly argued the cause for appellant. With him on the briefs was Larkins Vacura LLP.

Thomas W. Brown argued the cause for respondent. With him on the brief were Cosgrave Vergeer Kester LLP, and Kevin W. Luby and Luby Law Firm.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

## HADLOCK, J.

At issue in this case is whether a contractor forfeits the right to a construction lien if it accepts a trust deed to secure a debt owed by a property owner that otherwise would be secured by a construction lien. The trial court concluded that a contractor does not forfeit the right to a lien by accepting a trust deed if other parties with an interest in the property had notice that the contractor might claim a construction lien in addition to the trust deed. Accordingly, it ruled that the construction lien that plaintiff claimed in this case was valid, entered a judgment foreclosing the lien, and ruled that the lien was superior in priority to the interests of defendant, a bank that held a debt secured by another trust deed on the same property. We conclude that, as a matter of law, plaintiff forfeited its right to a construction lien when it accepted a trust deed. We therefore reverse.

Before we state the facts, a brief overview of the pertinent construction-lien statutes is helpful. ORS 87.010(1) provides that "[a]ny person performing labor upon, transporting or furnishing any material to be used in, or renting equipment used in the construction of any improvement shall have a lien upon the improvement" for the services or material furnished at the instance of the property owner. To perfect the lien, the person furnishing the services or material must file a lien claim with the county recording officer within 75 days after the person stops work or the construction is completed. ORS 87.035. Although the lien claim need not be filed until after the person's work is completed, the lien, once perfected, has priority over "all prior liens, mortgages or other encumbrances" on the property. ORS 87.025(2). Accordingly, even when a construction lien is perfected after another encumbrance was recorded, the construction lien has superior rights in the event of a foreclosure.[1] In other words, although a construction lien remains inchoate until a claim is filed, as

---

[1] A construction lien on a new structure, once perfected, takes priority even over other encumbrances that were recorded before the contractor started work on the property. *Cf.* ORS 87.025(6) (a lien for the alteration and repair of an improvement generally does not have priority over a mortgage or trust deed recorded before the work began). If multiple construction liens are filed, they have equal priority. *See* ORS 87.060(6) (if the proceeds of a foreclosure sale are insufficient to pay all construction lienholders, the liens "shall be paid pro rata").

a practical matter, it effectively encumbers the property as soon as the contractor begins work.

Because unrecorded construction liens become enforceable once they are perfected, someone who buys property or gives credit secured by an interest in property necessarily takes a risk that the property may already be subject to an unknown, but nevertheless potentially superior, encumbrance. For that reason, unrecorded liens historically were referred to as "secret liens" and are generally disfavored by the law. *See, e.g., Jones v. Gates*, 24 Or 411, 415, 33 P 989 (1893) ("The tendency of modern legislation and decisions is strongly opposed to the creation or enforcement of secret liens."). However, construction liens—which are expressly given priority by statute—stand as an exception to that general view, and have throughout Oregon's history. *See* General Laws of Oregon, Civ Code, ch XXVII, title I, §§ 2, 7, pp 763-65 (Deady 1845-1864) (providing that construction liens "shall have precedence over all other liens, after the commencement of the building," even though construction-lien claims may be filed "at any time within three months after the completion of" the construction).[2]

With that background in mind, we turn to the material facts of this case, which are not in dispute. A property owner, Cedar Brook Way, LLC, wanted to develop several parcels of land. To finance construction on two of the parcels, it obtained a $4.49 million line of credit from defendant, a bank, with funds to be disbursed over the course of the construction project. To secure repayment of the debt, Cedar Brook gave defendant a trust deed for the two parcels, which was recorded in August 2007.

---

[2] In some circumstances (not present in this case), a construction lien does not remain strictly secret until the lien claim is recorded with the county recording officer. That is so because perfecting the lien is not always the only action the contractor must take to protect its rights. ORS 87.021 provides that a contractor must give notice of the right to a lien to the property owner unless the contractor's work was performed at the request of the owner or the work was done on a commercial improvement. A lien may be perfected only to the extent that the required notice is given. *Id.* When the notice required by that statute is given, the lien, although still inchoate, is not secret from the recipient of the notice. In a broader sense, however, it remains secret from third parties, because the notice is not required to be recorded in the property records.

Cedar Brook hired plaintiff to pave parking lots and do other work on the property. Plaintiff substantially completed its work in February 2009. Because of a dispute over the quality of some of the work, Cedar Brook did not pay plaintiff. Plaintiff filed a construction-lien claim against the property, asserting that it was owed $192,252.01. Defendant did not want the property to be subject to a lien that would have priority over its trust deed, so, when it learned of plaintiff's lien claim, it told Cedar Brook that it would not fund any further construction work until Cedar Brook "got rid of" the lien.

Cedar Brook sought to dispense with the lien by suing plaintiff for slander on title by wrongful lien, alleging that plaintiff's work was defective and that plaintiff therefore had overstated the amount that Cedar Brook owed it, invalidating the lien claim. Soon thereafter, Cedar Brook and plaintiff entered into a settlement agreement. Plaintiff agreed to repair some of its work, to perform some new work, and to release its lien claim. Cedar Brook, in turn, agreed to pay the entire $192,252.01 claimed for the previous work, plus an additional $10,008.90 for the new work. The settlement required Cedar Brook to pay plaintiff $80,000 immediately and to pay the remainder in lump sums after plaintiff finished the new work and the repairs. Cedar Brook also agreed to secure its obligation to make the latter payments by granting plaintiff a trust deed for the property—the same two parcels underlying the trust deed that Cedar Brook had earlier granted defendant. The written settlement agreement states that nothing in its terms was "a release or waiver of [plaintiff's] right to record a lien against the property, in accordance with ORS 87.001 *et seq*, for all amounts due in the event of a default of the payment terms of this agreement."

Pursuant to the settlement, Cedar Brook dismissed its action against plaintiff, paid the initial $80,000, and gave plaintiff the trust deed; for its part, plaintiff filed a release stating that it "fully waive[d], release[d] and discharge[d]" the previously filed lien claim. Defendant resumed disbursing funds to Cedar Brook after it received a copy of the release and learned that plaintiff had received a trust deed. Defendant also received a copy of the settlement agreement.

Plaintiff began to perform the work contemplated in the settlement agreement. It completed all of the new work and some of the repairs. Cedar Brook failed to make the payment due upon completion of the new work and ultimately refused to allow plaintiff access to the property to finish the repairs. In July 2009, plaintiff filed a new construction-lien claim against the property. The following month, it commenced this action, claiming breach of contract and seeking foreclosure of the lien. In its complaint, plaintiff named as defendants both Cedar Brook and defendant, alleging, in addition to its claim against Cedar Brook, that its lien is superior in priority to the interest that defendant has in the property through its own trust deed.

Around the same time, Cedar Brook also defaulted on its debt to defendant, so defendant commenced an action to foreclose its trust deed. The two cases were consolidated for trial.[3] Cedar Brook failed to appear for trial, and the court issued an order of default against it. Accordingly, the only issues that remained for trial concerned the validity of plaintiff's lien. It was undisputed that, if plaintiff's lien was valid, it had priority over defendant's trust deed and, if the lien was invalid, defendant's trust deed had first priority. During the bench trial, defendant took the position that plaintiff's lien was invalid for two reasons: (1) plaintiff had waived its right to a lien when it released the first lien claim, precluding a second claim; and (2) plaintiff had forfeited its right to a lien when it accepted a trust deed to secure the debt.

The trial court ruled that the lien was valid and superior in priority because defendant had notice that, under plaintiff's settlement agreement with Cedar Brook, plaintiff had not waived the right to claim a lien against the property. The court therefore entered a general judgment in plaintiff's favor. The judgment awards plaintiff $122,260.91 plus interest on plaintiff's contract claim against Cedar Brook, and it orders the Washington County Sheriff to sell the property to satisfy the judgment. Thereafter, the court

---

[3] Four other construction-lien foreclosure cases involving the same property also were consolidated with these parties' actions. Those other cases settled before trial and are not at issue in this appeal.

entered a supplemental judgment ordering defendant and Cedar Brook to pay plaintiff's attorney fees.

On appeal, defendant renews its contention that plaintiff's lien was invalid, again arguing, among other things, that plaintiff forfeited its right to a construction lien by accepting a trust deed to secure the debt. In support of that position, defendant relies primarily on *Trullinger v. Kofoed*, 7 Or 228 (1879).

In *Trullinger*, a contractor, Runey, performed construction work on a building owned by Mary Kofoed and N. Kofoed, beginning in October 1876. *Id.* at 230. While the work was under way, the Kofoeds signed promissory notes to two other people, Parker and Crane, and, to secure the notes, executed mortgages on the property in their favor. The mortgage to Parker was executed in December 1876; the mortgage to Crane on March 13, 1877. Runey finished his construction work on March 15, 1877. *Id.* at 229-30. That day, he filed a construction lien—then referred to as a "mechanic's lien"—for roughly $1,200, the amount owed for his work. On the same day, the Kofoeds gave Runey a promissory note for the same amount and also executed a mortgage on the property in his favor to secure the note. *Id.* at 230.

In a later foreclosure action, the Supreme Court noted that the mortgages to Parker and Crane were executed before the mortgage to Runey and, therefore, "unless Runey's lien attaches, [their] mortgages would give Parker and Crane liens on the property prior to Runey's. It therefore becomes necessary to consider the question whether Runey waived his lien by taking a note and mortgage on the property to which the lien attached." *Id.* The court concluded that taking the mortgage did waive the lien.

In reaching that conclusion, the court adopted the rule—by then settled in other jurisdictions—that a contractor waives its construction lien if it takes a mortgage to secure the debt underlying the lien:

"[T]he rule seems to be well settled that where a mechanic takes a mortgage, either on the same property to which the lien attaches or on other property, that he thereby waives his lien, and the reason is, as observed in many of the

cases cited, that subsequent lien-holders and purchasers have a right to rely on the record, and should be protected against secret liens. In this case it is true that the lien was filed at the same time that the mortgage was given, but if the general doctrine be established, that the taking of a mortgage on the property is not a waiver of the mechanics' lien, a mechanic may hold a mortgage on the property and afterwards, at any time allowed by the statute, file his lien. In these cases of waiver, if it only concerned the immediate parties, it would ordinarily be a matter of little consequence how it was determined. 'But when the acts of individuals become the motive to the conduct of others, it is important that such acts should be made to bear their natural construction, so that deceit and imposition upon third persons may be prevented. And though one of the parties to the transaction is overreached, or was in error as to its consequences, that error cannot be remedied at the expense of third persons.'"

*Id.* at 232.

In this case, plaintiff does not dispute that the court held in *Trullinger* that taking a mortgage forfeits a construction lien.[4] Rather, plaintiff argues that, because defendant received a copy of the settlement agreement and thus had notice that plaintiff was not waiving its right to file a lien in the future, there was no "secret lien" or "deceit and imposition" from which defendant needed protection. Plaintiff contends that the forfeiture rule in *Trullinger* "applies only in those circumstances where the reasons for the rule exist—where there is 'deceit and imposition upon third parties' by the lien claimant."

We disagree. Read with the facts of the case in mind, *Trullinger* appears to have announced a bright-line rule regarding the effect that taking a mortgage (or trust deed) has on a construction lien, given the reason for the rule and how it was applied in that case. The court reasoned

---

[4] Both parties agree that, although *Trullinger* refers to "waiver" of a lien, in today's parlance, "forfeiture" is the appropriate term. We agree as well. *See State v. Steen*, 346 Or 143, 153 n 8, 206 P3d 614 (2009) (waiver is an intentional relinquishment of a known right or privilege and is only one means by which a forfeiture may occur); *Trullinger*, 7 Or at 231-32 (finding that "it was not the intention of Runey to abandon his lien and rely wholly on the mortgage for his security," but holding that, by taking the mortgage, Runey "waived" the lien).

that third parties are entitled to be protected against secret construction liens when the property records reflect that the contractor has taken another form of security for the construction debt. As the court said, when a contractor takes a mortgage, "it is important that such acts should be made to bear their natural construction," *id.*, meaning that third parties likely would assume that the mortgage is the only encumbrance securing that debt. Given that assumption, a mortgage in the record would allow "deceit and imposition" on third parties if the contractor holding the mortgage was permitted to later file a lien claim for the same debt. In other words, the reason for the rule in *Trullinger* is that third parties might be misled as to the significance of the mortgage with respect to other potential liens against the property.[5]

The rule does not apply only when that reason is present, however, as plaintiff contends. Indeed, the reason for the rule was not present in *Trullinger* itself: When the third parties—Parker and Crane—took their mortgages, Runey had not yet received his mortgage, so nothing in the record could have misled Parker or Crane into believing that the property was not encumbered by a construction lien. The court acknowledged as much but applied the rule anyway, explaining that, "if the general doctrine be established, that the taking of a mortgage on the property is not a waiver of the mechanic's lien, a mechanic may hold a mortgage on the property and afterwards, at any time allowed by the statute, file his lien." *Id.* In short, although there was no "deceit or imposition upon third persons" in *Trullinger*, the court held that Runey's construction lien was invalid. It

---

[5] We do not understand the *Trullinger* court's statement that "subsequent lienholders and purchasers have a right to rely on the record, and should be protected against secret liens," 7 Or at 232, to refer only to the *absence* of any mention of unrecorded lien claims in county records. Rather, we read that statement to refer to the inferences that third parties are entitled to draw from the *presence* of recorded mortgages and other encumbrances. As noted above, when *Trullinger* was decided—as now—secret construction liens were authorized by statute. 251 Or App at 200. Accordingly, the court could not adopt a rule protecting third parties against *all* secret liens; such a rule would eviscerate the statute giving perfected liens priority over other encumbrances, including those encumbrances that were recorded after the inchoate liens came into existence. Instead, we understand the quoted statement from *Trullinger* to refer to a third party's right to rely on the presence of a contractor's mortgage in the record and the implication that carries with respect to the nonexistence of construction liens for the same debt.

follows that *Trullinger* established a bright-line rule: When a contractor takes a mortgage to secure a construction debt, the contractor forfeits the right to a construction lien. *See also Spaulding Log. Co. v. Ryckman*, 139 Or 230, 239-40, 6 P2d 25 (1931) ("It is settled by *Trullinger* * * * that where a lien claimant takes a mortgage upon the same or other property as security for his debt, he thereby waives his right to a lien. In that case the court cited, among other cases, *Barrows v. Baughman*, 9 Mich 213[, 217-18 (1861)], where the court, after announcing the principle that a mortgage is 'a species of security entirely inconsistent with the idea of a mechanic's lien upon the same land as a security for the same debt,' then said: '* * * the statute creates no lien, where the parties, by their contract, provide for a different security upon the same land for the same debt which the lien would otherwise secure.'" (Omission in *Spaulding Log. Co.*)).

In short, *Trullinger* compels the conclusion in this case that, as a matter of law, by taking the trust deed, plaintiff forfeited the right to a construction lien. The parties have not identified any statutory changes that undermine the general principles announced in *Trullinger*, or call the continuing viability of that holding into question, and we are not aware of any. The trial court erred in concluding that plaintiff's lien was valid.

Defendant also assigns error to the award of attorney fees to plaintiff in the supplemental judgment. The award was based on ORS 87.060(5), which provides, "In a suit to enforce a lien perfected under ORS 87.035 the court shall allow a reasonable amount as attorney fees at trial and on appeal to the party who prevails on the issues of the validity and foreclosure of the lien." In light of our conclusion that plaintiff's lien was invalid, plaintiff was not entitled to an attorney fee award.

General judgment on plaintiff's foreclosure claim reversed, otherwise affirmed; supplemental judgment reversed.