Argued and submitted May 4, 2011, on appeal, limited judgment reversed and remanded; on cross-appeal, affirmed; supplemental judgment affirmed on cross appeal November 7, 2012, petition for review denied April 25, 2013 (353 Or 533)

SERA ARCHITECTS, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*
*Cross-Respondent,*

*v.*

KLAHOWYA CONDOMINIUM, LLC,
dba Klahowya, LLC,
an Oregon limited liability company,
*Defendant-Respondent,*

*and*

SHOREBANK PACIFIC CORPORATION
dba Shorebank Pacific,a Delaware corporation,
*Defendant-Respondent*
*Cross-Appellant,*

*and*

Carl GATZKE,
individually, and dba Klahowya, LLC;
Susan Mikolasy, individually, and dba Klahowya, LLC;
and BooCo Construction, Inc.,
an Oregon corporation,
*Defendants.*

BOOCO CONSTRUCTION, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

KLAHOWYA CONDOMINIUM, LLC,
dba Klahowya, LLC,
an Oregon limited liability company;
and Shorebank Pacific
*Defendants.*

SERA ARCHITECTS, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

KLAHOWYA CONDOMINIUM, LLC,
dba Klahowya, LLC,
an Oregon limited liability company;
Shorebank Pacific Corporation,
dba Shorebank Pacific,
a Delaware corporation,
*Defendants-Respondents*,
*and*

Carl GATZKE,
individually, and dba Klahowya, LLC;
Susan Mikolasy, individually, and dba Klahowya, LLC;
and BooCo Construction, Inc.,
an Oregon corporation,
*Defendants.*

BOOCO CONSTRUCTION, INC.,
an Oregon corporation,
*Plaintiff,*

*v.*

KLAHOWYA CONDOMINIUM, LLC,
dba Klahowya, LLC,
an Oregon limited liability company;
and Shorebank Pacific
*Defendants.*

Clackamas County Circuit Court
CV07100715, CV07120131;
A140946 (Control), A142185

290 P3d 881

James N. Westwood argued the cause for appellant - cross-respondent SERA Architects, Inc. With him on the briefs were Christine A. Kosydar and Stoel Rives LLP.

Daniel L. Steinberg argued the cause for respondent - cross-appellant Shorebank Pacific Corporation. With him on the briefs were M. Elizabeth Duncan and Greene & Markley, P.C.

No appearance for respondent Klahowya Condominium, LLC.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.*

ORTEGA, P. J.

---

* Brewer, J., *vice* Rosenblum, S. J.

## ORTEGA, P. J.

This appeal involves a dispute over priority by two creditors of Klahowya Condominium, LLC, (Klahowya), the developer of a failed property development. The trial court concluded that trust deeds held by defendant Shorebank Pacific Corporation (Shorebank) had priority over an architect's lien filed by plaintiff SERA Architects, Inc. (SERA) and entered a limited judgment to that effect. The trial court's decision had two aspects: first, that Shorebank's trust deed had priority under the Construction Lien Law, ORS 87.005 - 87.060, and second, that, under the doctrine of equitable subrogation, Shorebank's trust deed was substituted to the first position of a prior mortgagee whose loan had been paid off from the proceeds of Shorebank's loan. SERA appeals the limited judgment, assigning error to the trial court's determination of priority. Shorebank cross-appeals the limited judgment, challenging trial court rulings related to the validity of SERA's lien. Shorebank also cross-appeals the supplemental judgment that awarded attorney fees to SERA from Klahowya, arguing that SERA was not entitled to the full amount of fees awarded because a large percentage of those fees were incurred in SERA's failed attempt to establish priority over Shorebank.

Ultimately, we conclude that SERA's lien had priority over Shorebank's trust deed under the Construction Lien Law and that the trial court erred by subrogating Shorebank's trust deed to first position. Accordingly, we reverse and remand the limited judgment on appeal. Given our resolution of SERA's appeal, we also affirm the supplemental judgment, which Shorebank cross-appeals.

The following facts are undisputed. In January 2006, Klahowya[1] purchased property in Government Camp (the development property) with a loan of $1,300,000 from Triangle Holdings II, LLC (Triangle) to build a mixed-use development. The Triangle loan was secured by a trust deed on the development property from Klahowya, which Triangle recorded on January 30, 2006. On March 28, 2006,

---

[1] Carl Gatzke and Susan Mikolasy were named as individual defendants jointly doing business as Klahowya. For ease of reference, we refer to all three parties as Klahowya.

SERA and Klahowya entered into a contract for SERA to provide architectural services for the development; SERA commenced work on the plans that March and held a workshop for consultants, owners, and other interested parties early in April. Shorebank's representatives attended the workshop. In July 2006, the contractor, BooCo Construction, Inc. (BooCo), began preparing the property for construction by demolishing existing cabins and clearing trees. BooCo stopped work at the site in October 2006 without commencing construction.

In November 2006, Shorebank provided Klahowya with a line of credit, secured by a trust deed on the development property, in the amount of $1,462,000, from which Klahowya paid off the $1,425,000 balance of the Triangle loan.[2] Shorebank recorded the trust deed on the development property on November 15, 2006. Shorebank also extended an additional line of credit for $250,000 to Klahowya, which was secured by a trust deed on land abutting Blossom Trail (the Blossom Trail property). Shorebank recorded that trust deed on February 9, 2007.[3] Finally, Shorebank extended an additional $250,000 under its original line of credit, and Shorebank and Klahowya executed a modification of the trust deed on the development property to reflect a new principal balance of $1,712,000 and an increase in the interest rate on the original note. Shorebank recorded the modification of the trust deed on May 29, 2007.

Klahowya paid SERA for services rendered until sometime in early 2007, at which point it stopped making payments. SERA recorded a claim of lien on the property on June 29, 2007, asserting a lien for $375,598, plus interest.

In October 2007, SERA sued Klahowya and Shorebank for foreclosure of its construction lien, alleging that Klahowya owed it a balance of $375,598, together with fees and interest, for work performed under the contract.[4]

---

[2] The principal balance had increased from the original loan amount because of accrued interest on the loan.

[3] According to Shorebank, the promissory note related to the trust deed on the Blossom Trail property was satisfied and is no longer relevant to this appeal. SERA does not dispute that characterization of the record, and we, therefore, do not address any priority issue with the Blossom Trail trust deed in this appeal.

[4] SERA also brought breach of contract and *quantum meruit* claims against Klahowya, neither of which is relevant to this appeal. SERA later amended its

SERA also alleged that any "right, title or interest in the [development p]roperty" claimed by Shorebank "is junior and subordinate to SERA's." Two months later, BooCo filed suit against Klahowya and Shorebank for breach of contract and foreclosure of a construction lien filed by BooCo. Eventually, the trial court consolidated the cases.

Shorebank answered SERA's complaint and raised several affirmative defenses, including that Shorebank's trust deed had priority over SERA's lien by virtue of the Construction Lien Law and that, regardless, Shorebank was equitably subrogated to the first lien position of Triangle's trust deed to the extent that Shorebank's loan proceeds were used to pay off the Triangle loan. Shorebank also brought a counterclaim against Klahowya to foreclose Shorebank's trust deed.

After the parties engaged in extensive pretrial motion practice, the trial court conducted a bench trial on SERA's lien claims as to the amount due SERA by Klahowya and the priority issue between SERA and Shorebank. At the close of trial, the court ruled that Shorebank's trust deed on the development property had priority over SERA's lien. The court later entered a limited judgment in favor of SERA against Klahowya for the amount of the lien, but establishing the priority of Shorebank's trust deed over SERA's lien.[5]

After trial, SERA petitioned for attorney fees from Klahowya pursuant to ORS 87.060 and its contract with Klahowya. Shorebank opposed the petition, contending that, to the extent that SERA sought attorney fees related to its "claim of foreclosure against Shorebank," such fees were improper because SERA did not prevail on that claim. Accordingly, Shorebank argued that $74,745 of the fees sought were unavailable because they pertained to SERA's unsuccessful litigation with Shorebank over priority. The trial court entered a supplemental judgment awarding SERA the full amount of fees it had sought.

---

complaint to add BooCo as a defendant; SERA's claims as to BooCo are not relevant to this appeal.

[5] The court entered a general judgment in the case granting Shorebank a money award and a lien on the development property.

SERA appeals from the limited judgment. Shorebank cross-appeals from the limited judgment and the supplmental judgment awarding attorney fees. We begin with Shorebank's cross-appeal of the limited judgment because of its potential to be dispositive and conclude that it does not provide a basis for reversal.

Exhaustive detail of the proceedings and legal arguments that underlie Shorebank's cross-appeal would not benefit the bench, bar, or public, but we briefly describe the context for our decision to affirm the trial court's ruling that Shorebank challenges. Shorebank made a motion at the close of SERA's case that has been alternatively characterized as a motion for reconsideration of an earlier summary judgment order or a motion for directed verdict. Shorebank sought a ruling that SERA's lien—which the trial court had already ruled was valid in the context of earlier proceedings in which Shorebank chose not to participate—was untimely under ORS 87.035[6] and was therefore invalid. The trial court, without reaching the merits, declined to reconsider its prior summary judgment order as to the validity of SERA's lien and denied Shorebank's motion based on the stage of the proceedings at which Shorebank raised it and the circumstances that preceded it. We conclude that the trial court did not err in so ruling. We also reject Shorebank's second assignment of error on cross-appeal without further discussion.

We proceed to address SERA's appeal from the limited judgment, challenging the trial court's ruling that Shorebank's trust deed had priority over SERA's lien. At trial, SERA argued that, under the Construction Lien Law, its lien had priority over Shorebank's trust deed. Shorebank countered that the lien law supported Shorebank's claim of priority and, alternatively, that the doctrine of equitable subrogation placed Shorebank's trust deed in the same position as Triangle's trust deed, thus giving Shorebank priority.

The trial court concluded that Shorebank's trust deed on the development property would hold the same priority position as Triangle's trust deed by equitable

---

[6] ORS 87.035 requires, among other things, a lien claimant to perfect the lien by filing a claim of lien within a specified time frame.

subrogation—at least as to the amount of the Shorebank loan that was used to pay off the Triangle loan. Because there remained a question of priority of the additional Shorebank loans ($250,000 related to the modification of the trust deed on the development property and $250,000 related to the separate note secured by the trust deed on the Blossom Trail property), the court also analyzed the relevant statutes and determined that Shorebank's trust deeds, as to those additional amounts, had priority over SERA's lien. We conclude that the trial court was incorrect in both of those conclusions.

Although the trial court first addressed the issue of equitable subrogation and then analyzed the priority issue under the relevant statutes, we begin with the statutory issue because of its potential to dispose of the entire appeal. That is, if Shorebank's trust deed has priority under the Construction Lien Law, then all amounts secured by its trust deed would have priority over SERA's lien,[7] thereby obviating the need to address whether the trial court erred by applying equitable subrogation in this case.

In preparation for our examination of the Construction Lien Law, we begin with a general common-law rule that operates in the background of the governing statutes—the "first in time is first in right" rule. *See Director of Veterans' Affairs v. Vickery*, 299 Or 315, 318, 702 P2d 1070 (1985) (recognizing that rule in the context of determining if a mortgage lien had priority over a city's nuisance abatement lien). Stated simply, that rule provides that an earlier lien is entitled to satisfaction before a subsequent lien. *See Rankin v. Scott*, 25 US (12 Wheat) 177, 179, 6 L Ed 192 (1827) ("The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant.").

That general rule, however, is subject to legislative action that restructures the normal priorities. *Vickery*, 299

---

[7] It is undisputed that Shorebank's trust deed and the modification of the trust deed were recorded before SERA recorded its claim of lien.

Or at 319. Construction liens are, to some extent, an example of such legislative action. Although they were unknown at common law, as far back as 1864, the legislature granted construction liens priority over both prior and subsequently recorded mortgages. *See* General Laws of Oregon, Civ Code, ch XXVII, title I, §§ 2, 7, pp 763-65 (Deady 1845-1864); *see also Hickey v. Polacheck*, 63 Or App 784, 786, 666 P2d 294 (1983) (noting that later versions of lien statutes granted construction liens priority). The construction lien laws are "designed to protect laborers and materialmen who expend their labor and materials upon the buildings of others." *Lemire v. McCollum*, 246 Or 418, 426, 425 P2d 755 (1967). Accordingly, in some circumstances, the legislature has "restructured the normal priorities" and granted "super-priority" to certain types of construction liens. In those instances, "even when a construction lien is perfected after another encumbrance was recorded, the construction lien has superior rights in the event of a foreclosure." *Evergreen Pacific, Inc. v. Cedar Brook Way, LLC*, 251 Or App 194, 199, 284 P3d 509 (2012).

With that background in mind, we turn to the applicable statutes. ORS 87.010 sets forth a number of categories of construction-related liens, one of which is the architect's lien that is at issue in this case. Specifically, ORS 87.010(5) provides:

> "An architect, landscape architect, land surveyor or registered engineer who, at the request of the owner or an agent of the owner, prepares plans, drawings or specifications that are intended for use in or to facilitate the construction of an improvement or who supervises the construction shall have a lien upon the land and structures necessary for the use of the plans, drawings or specifications so provided or supervision performed."

ORS 87.035 provides the process for perfecting a construction lien, which is done by timely filing a claim of lien with the county recording officer.[8]

---

[8] ORS 87.035, in part, states:

"(1) Every person claiming a lien created under ORS 87.010(1) or (2) shall perfect the lien not later than 75 days after the person has ceased to provide labor, rent equipment or furnish materials or 75 days after completion of construction, whichever is earlier. Every other person claiming a lien created

ORS 87.025 establishes specific rules that address priority of construction liens in various circumstances. The following provisions of that statute are relevant to our analysis:

"(1) A lien created under ORS 87.010(2) or (6) and perfected under ORS 87.035 upon any lot or parcel of land shall be preferred to any lien, mortgage or other encumbrance which attached to the land after or was unrecorded at the time of commencement of the improvement.

"(2) Except as provided in subsections (3) and (6) of this section, a lien created under ORS 87.010(1), (4) or (5) and perfected under ORS 87.035 upon any improvement shall be preferred to all prior liens, mortgages or other encumbrances upon the land upon which the improvement was constructed. To enforce such lien the improvement may be sold separately from the land; and the purchaser may remove the improvement within a reasonable time thereafter * * *.

"(3) No lien for materials or supplies shall have priority over any recorded mortgage or trust deed on either the land or improvement unless the person furnishing the material or supplies [gives notice to the mortgagee].

"* * * * *

"(7) The perfection of a lien under ORS 87.035 relates to the date of commencement of the improvement as defined in ORS 87.005. Except as provided in subsection (3) of this section, the date of creation of the lien under ORS 87.010 and the date of perfection of the lien under ORS 87.035 do not affect the priorities under this section, the equal priority of perfected lien claimants, or the distribution of proceeds to perfected lien claimants under ORS 87.060(6)."[9]

---

under ORS 87.010 shall perfect the lien not later than 75 days after the completion of construction. All liens claimed shall be perfected as provided by subsections (2) to (4) of this section.

"(2) A lien created under ORS 87.010 shall be perfected by filing a claim of lien with the recording officer of the county or counties in which the improvement, or some part thereof, is situated.

"(3) [listing the items that a claim of lien must contain].

"(4) The claim of lien shall be verified by the oath of the person filing * * * subject to the criminal penalties for false swearing * * *."

[9] ORS 87.060(6) provides:

"In case the proceeds of any sale under ORS 87.001 to 87.060 * * * are insufficient to pay all lienholders claiming under such statutes, the liens of

SERA's argument at trial and on appeal is straightforward. SERA contends that ORS 87.010(5) authorizes its lien on the land and structures necessary for the use of the plans, drawings, or specifications it prepared. ORS 87.035(2) provides that the lien must be perfected by recording a claim of lien. ORS 87.025(7) states, in part, that "[t]he perfection of lien under ORS 87.035 relates to the date of commencement of the improvement as defined in ORS 87.005." SERA asserts that its lien relates back to the date that BooCo began work on the development property in July 2006 because "commencement of the improvement" is defined in ORS 87.005(1) as the "first actual preparation or construction upon the site * * * of such substantial character as to notify interested persons that preparation or construction upon the site has begun or is about to begin[,]" and ORS 87.005(9) provides that " '[p]reparation' means excavating, surveying, landscaping, demolishing or detaching existing structures or leveling, filling in or otherwise making land ready for construction." According to SERA, because BooCo's site preparation began in July 2006—before Shorebank recorded its trust deed—SERA's lien has priority over Shorebank's trust deed.

Shorebank counters that, because its trust deed was recorded before SERA filed its claim of lien in June 2007, Shorebank's trust deed has priority under the first in time is first in right rule. That is, Shorebank's position is that priority of SERA's lien is measured for purposes of the first in time is first in right rule by the date that SERA filed its claim of lien, not the "commencement of the improvement." Shorebank also notes that although ORS 87.025(2) grants priority to certain liens over prior recorded interests, that statute is not applicable here because it operates to grant superpriority only when an improvement has been constructed. *See Bratzel v. Stafford*, 140 Or 661, 664-65, 14 P2d 454 (1932) (concluding that prodecessor statute to ORS 87.025 was intended to prioritize construction liens only over the improvement). Accordingly, Shorebank notes that

all persons shall be paid pro rata. Each claimant is entitled to execution for any balance due the claimant after the distribution of the proceeds, and that execution shall be issued by the clerk of the court * * *."

although SERA had a lien upon the land, ORS 87.025(2) did not grant that lien any priority.[10]

Shorebank also disputes SERA's assertion that ORS 87.025(7) grants all construction liens priority as to the date of the "commencement of the improvement." Shorebank maintains that the second sentence of ORS 87.025(7) "expressly states that it does not [a]ffect priorities." Accordingly, Shorebank argues that ORS 87.025(7), by its plain terms, does not change the priority rule in ORS 87.025(2) and that because ORS 87.025(2) only grants priority to liens perfected on an improvement, Shorebank has priority under the first in time is first in right rule.

Properly framed, the parties' fundamental disagreement reduces to a dispute over the date that SERA's lien on the development property should be measured for purposes of the first in time is first in right rule. SERA asserts that its lien encumbered the development property before Shorebank's trust deed was recorded, while Shorebank argues that SERA's lien did not encumber the development property until the claim of lien was recorded—which was after Shorebank recorded its trust deed.

Accordingly, the outcome of this case depends largely on the meaning of ORS 87.025(7) and how it operates in the context of this case and the other relevant statutes. To make that determination, we must ascertain the legislature's intent by examining the text, context, and any relevant legislative history of the statutes, resorting if necessary to maxims of statutory construction. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

Initially, we agree with SERA that ORS 87.010(5) establishes that, once SERA prepared plans, drawings, or specifications intended for use in the construction of an improvement to Klahowya, SERA had "a lien upon the land and structures necessary for the use of the plans, drawings or specifications." That lien was then inchoate and was not enforceable until SERA perfected it by complying with ORS

---

[10] Shorebank does not argue on appeal that the lack of improvement on the development property defeated the validity of SERA's lien.

87.035. Once it did so, however, ORS 87.025(7) provides that the lien "relates to the date of commencement of the improvement as defined in ORS 87.005." Therefore, the statute appears to contemplate that the lien attaches to the property at the "commencement of the improvement." Because it is undisputed that BooCo commenced the improvement in July 2006, SERA's lien would relate to that date for purposes of establishing priority unless the remainder of ORS 87.025(7) precludes that construction of the statutory scheme.

As noted, ORS 87.025(7) provides:

"The perfection of a lien under ORS 87.035 relates to the date of commencement of the improvement as defined in ORS 87.005. Except as provided in subsection (3) of this section, the date of creation of the lien under ORS 87.010 and the date of perfection of the lien under ORS 87.035 do not affect the priorities under this section, the equal priority of perfected lien claimants, or the distribution of proceeds to perfected lien claimants under ORS 87.060(6)."

Added to the Construction Lien Law in 1987, Or Laws 1987, ch 662, § 3, as part of Senate Bill (SB) 356 (1987),[11] its legislative history reveals that ORS 87.025(7) was not intended to alter existing law as to priorities. Instead, it was intended to make explicit that a lien created under ORS 87.010 and perfected under ORS 87.035 relates back to the commencement of the improvement as that term was defined in the statute. Exhibit A, House Committee on Judiciary, Subcommittee 4, SB 356, June 10, 1986 (summary of amendments by Oregon Bankers Association, Construction Industry Committee, Associated General Contractors, Oregon Land Title Association, and Home Builders Association). The legislative history also indicates that the statute was intended to clarify that, if a lien was created under ORS 87.010 before a party filed a bankruptcy petition, but the claim of lien was filed under ORS 87.035 after the party filed its bankruptcy petition, the lien would have priority over the bankruptcy trustee. *Id.* Most importantly to our analysis, the legislative history

---

[11] Senate Bill 356, in addition to adding ORS 87.025(7), reduced the time period within which to perfect liens from 90 days to 75 days after a triggering event, changed certain notice requirements, and provided a cause of action against lien claimants in certain circumstances.

is clear that the bill was "*not* intended to alter existing law as to priorities, alter the equal priority of a perfected lien claimant's liens or the distribution of proceeds to them under ORS 87.060(6)." *Id.*; *see also* Minutes, House Committee on Judiciary, Subcommittee 4, June 10, 1987, 2.

Accordingly, we must inquire as to the law of priorities in construction liens at the time that the legislature enacted ORS 87.025(7). At that time, the law was that a construction lien, if perfected by filing a claim of lien, related to and encumbered the property as of the beginning of construction or the delivery of materials. *See Evergreen*, 251 Or App at 199-200 (noting that, although a construction lien "remains inchoate until a claim is filed, as a practical matter, it effectively encumbers the property as soon as the contractor begins work").

In *Hickey*, 63 Or App at 786, which preceded SB 356 by four years, we concluded, under slightly different circumstances, that a construction lien perfected by filing a claim of lien related back to the beginning of the work. There, the defendant delivered materials to a construction site from December 1977 through February 1979 and recorded a construction lien in March 1979. In the meantime, two mortgages had been recorded after the date that materials were first delivered by the defendant but before the defendant recorded its lien. In resolving the priority dispute, we noted that it was the "long-standing and clearly-established law that a construction lien * * * attaches when materials are first furnished but remains inchoate until the lien is filed, at which time it relates back to the beginning of the work." *Id.* Accordingly, for purposes of determining priority, the construction lien attached when materials were first delivered to the property. *Id.* Our conclusion in *Hickey* is consistent with a century of Oregon cases. *See Auld v. Starbard*, 89 Or 284, 289, 173 P 664 (1918) (noting that a "laborer's" or "materialman's" lien relates to the beginning of the work); *Henry v. Hand*, 36 Or 492, 498, 59 P 330 (1899) (interpreting predecessor lien statutes and concluding that "the lien shall attach at the time of the commencement of the structure"). Accordingly, the principle that a construction lien encumbers the property on the date that site work

begins or materials are delivered, and not the date that the claim of lien is filed, has remained consistent.

Therefore, we conclude that SERA's lien was created under ORS 87.010(5) when SERA began work on the project and, when it perfected its lien under ORS 87.035, the lien related back to July 2006 when BooCo "commenc[ed] the improvement" as that term is defined in ORS 87.005. For purposes of measuring priority, the lien related back to July 2006, and Shorebank recorded its trust deeds subsequently. Accordingly, the trial court erred when it concluded that Shorebank's trust deed had priority over SERA's lien under the Construction Lien Law.

Having concluded that SERA's lien had priority over Shorebank's trust deed, we must resolve the question of whether that trust deed, at least as to the portion of the loan proceeds used to pay off the Triangle loan, can be equitably subrogated to the position of Triangle's trust deed. If so, then Shorebank would be in first lien position as compared to the SERA lien, because Triangle's trust deed was recorded several months before BooCo began preparation of the development property.

Shorebank raised equitable subrogation as an affirmative defense, and we review such defenses according to their character. *See Burt, Vetterlein & Bushnell, P.C. v. Stein,* 117 Or App 363, 369, 844 P2d 239 (1992), *rev den,* 316 Or 527 (1993). Accordingly, our review of the facts is *de novo.*[12] Nevertheless, the parties do not dispute the facts that underlie the trial court's application of equitable subrogation, and we review the trial court's determination in light of those undisputed facts.

The doctrine of equitable subrogation, in this context, has been described as follows:

"'If the holder of a mortgage take[s] a new mortgage as a substitute for a former one, and cancel[s] and release[s] the latter in ignorance of the existence of an intervening

---

[12] The notice of appeal in this case was filed before the effective date of the legislative change to ORS 19.415(3) that made *de novo* review in most equity cases discretionary. *See* Or Laws 2009, ch 231, § 2. Accordingly, we apply the 2007 version of the statute, under which *de novo* review is required.

lien upon the mortgaged premises, although such lien be of record, equity will, in the absence of the intervening rights of third parties, restore the lien of the first mortgage and give it its original priority.'"[13]

*Dimeo v. Gesik*, 164 Or App 567, 571, 993 P2d 183 (1999) (quoting *Pearce v. Buell*, 22 Or 29, 33, 29 P 78 (1892)) (brackets in original). Ultimately, the doctrine is intended to "prevent manifest injustice and hardship." *Pearce*, 22 Or at 33.

On appeal, the parties focus their arguments on whether Shorebank was in fact ignorant of SERA's lien and, if so, whether that ignorance was excusable. As we have previously explained in *Dimeo*, equitable subrogation does not apply unless the lender "proves that it was ignorant of the existence of the intervening lien and that its ignorance was not a result of inexcusable negligence." 164 Or App at 571.

SERA contends that Shorebank failed to demonstrate that it was ignorant of SERA's intervening lien or that any ignorance was excusable. In support, SERA points to the following facts: (1) Shorebank attended, in the role of "banker," the April 2006 workshop hosted by SERA at which site preparation plans were discussed and a timeline for construction was assembled; (2) actual site preparation occurred between July 2006 and October 2006; (3) Shorebank and Klahowya's loan negotiations in October 2006 included discussions of SERA's work. In light of those facts, and the fact that Shorebank is a commercial lender, SERA asserts that Shorebank was, in fact, aware of SERA's lien on the property and equitable subrogation cannot apply.

Shorebank does not dispute those facts, but argues that equitable subrogation is proper because it reasonably believed that SERA had no lien when Shorebank recorded its trust deed in November 2006. Shorebank explains that SERA's claim of lien was not recorded until June 2007, and Shorebank specifically asked Klahowya whether it had paid SERA in full before completing the refinancing in November 2006. Shorebank asserts that SERA never informed it that

---

[13] We have also applied the doctrine when a lender did not take a new mortgage as a substitute for a former mortgage, but instead released funds to a party on the condition that those funds be used to pay off prior trust deeds. *See Dimeo*, 164 Or App at 571; *Rusher v. Bunker*, 99 Or App 303, 305, 782 P2d 170 (1989).

Klahowya was not paying its bills. Shorebank reasons that, as a result, as of the date that it recorded its trust deed, it had no grounds to believe that SERA had a lien on the development property and that, therefore, its ignorance of SERA's lien was excusable. Also implicit in Shorebank's argument is that its understanding of the law—that Shorebank had priority because it recorded its trust deed before SERA filed a claim of lien—contributed to Shorebank's ignorance of SERA's lien.

As a general matter, actual ignorance of the intervening lien is required, *Dimeo*, 164 Or App at 571, but constructive knowledge of an intervening lien is not necessarily a bar to application of the doctrine. For example, in *Rusher v. Bunker*, 99 Or App 303, 309, 782 P2d 170 (1989), we declined to adopt a *per se* rule that constructive notice from recording is incompatible with an equitable subrogation claim. *See also Pearce*, 22 Or at 33 (concluding that relief was available even though the intervening lien was recorded). Nevertheless, we recognized in *Rusher* that a lender's failure to search the record may weigh against application of equitable subrogration. 99 Or App at 309. Furthermore, constructive notice of an intervening lien may be "excused" if the lender proceeded with the transaction based on misrepresentations, fraud, or misleading information provided by another. *Pearce*, 22 Or at 30-31 (a lender released a former mortgage in favor of a new mortgage based on the mortgagor's misrepresentation that there were no other intervening encumbrances).

For example, in *Metropolitan Life Ins. Co. v. Craven*, 164 Or 274, 101 P2d 237 (1940), the lender advanced money to pay off a prior encumbrance in ignorance of a recorded intervening lien. The Supreme Court ultimately granted equitable relief because the lender's ignorance was induced by a misrepresentation by the property owner that no junior liens existed, and the lender obtained an abstract of title from a title company that failed to reveal the junior lien. *Id.* at 283; *see also Rusher*, 99 Or App at 305-06, 309 (equitable subrogation was appropriate where the lender relied on misinformation from a title company that no intervening liens had been filed between the time of the preliminary title report and the lender's recording of its trust deed); *cf. High*

*v. Davis*, 283 Or 315, 333-34, 584 P2d 725 (1978) (where the lender had notice of membership agreements creating hunting and fishing rights and proceeded without further investigation, the equities were not sufficient to subrogate the lender to the rights of prior lienors).

Shorebank's position requires us to accept that its ignorance of construction lien law is tantamount to ignorance of SERA's lien or, second, that even though SERA's lien encumbered the property as of July 2006, because that lien was inchoate and Klahowya was current in payments to SERA until well after Shorebank recorded its trust deed, Shorebank was ignorant of the lien and that ignorance was excusable. Neither of those positions supports the application of equitable subrogation.

Shorebank had actual notice of the facts that led to the creation of SERA's lien—that is, Shorebank was aware that Klahowya had contracted with SERA to perform architectural services for the project and that SERA was in fact providing those services. Shorebank was aware of the construction timeline that indicated that site preparation would begin in mid-2006, and BooCo began preparation according to that plan. In that sense, Shorebank had actual notice of SERA's lien. Moreover, this case is unlike any other in which equitable subrogation was used to prevent manifest injustice. Shorebank's "ignorance" in this case was not induced by misrepresentations or negligence of others, but rather was due to its misunderstanding of the law. We decline to extend the doctrine of equitable subrogation to the circumstances presented here.

Finally, we address Shorebank's cross-appeal of the supplemental judgment awarding SERA $120,144.56 in attorney fees against Klahowya under an attorney fees provision in their contract and ORS 87.060. Shorebank challenged SERA's attorney fees petition before the trial court on the basis that over $74,000 of the fees sought were related to SERA's attempts to secure priority over Shorebank's trust deeds. On cross-appeal, Shorebank reiterates that argument, contending that the trial court abused its discretion in awarding the full amount because SERA did not prevail in foreclosing its lien against Shorebank.

In light of our resolution of SERA's appeal, Shorebank's argument that SERA did not prevail in foreclosing its lien against Shorebank is no longer valid. Accordingly, we affirm the supplemental judgment awarding attorney fees to SERA.

On appeal, limited judgment reversed and remanded; on cross-appeal, affirmed; supplemental judgment affirmed on cross-appeal.